CITY OF BOSTON *vs.* INHABITANTS OF BROOKLINE.

Norfolk.    November 10, 1891. — March 31, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Eminent Domain — Taking Land already devoted to Public Use.*

Land devoted to one public use may by the general authority given to cities and towns or county commissioners be taken for another public use, provided that such taking does not impair or interfere with or is not inconsistent with the public use already existing.

The right to exercise the power of eminent domain given to the city of Boston by the St. of 1865, c. 131, for the purpose of taking such lands or real estate as may be necessary for laying and maintaining lines of pipes from its reservoir in the town of Brookline to the city of Boston, and conducting such pipes over or under any watercourse, or any street, turnpike, road, railroad, highway, or other way, in such manner as not to obstruct or impede travel thereon, does not exclude the exercise of the right of eminent domain by the town, under the Pub. Sts. c. 49, for the purpose of laying out a way over the same lands or real estate so taken by the city, especially where the facts found show that there is no inconsistency between the use of the land for laying water-pipes and its use as a way, and that the latter will not interfere with the former.

BILL IN EQUITY, filed on June 7, 1890, praying that the defendant be restrained from constructing a public road along a strip of land taken by the plaintiff for laying its water-pipes. Hearing before *Holmes*, J., who reserved the case for the consideration of the full court, in substance as follows.

The St. of 1865, c. 131, declared that the city of Boston through the agency of the Cochituate Water Board might lay and maintain one or more suitable lines of pipes from the reservoir therein provided for to a convenient point in its line of pipes leading from its reservoir in Brookline to the city, and might take and hold by purchase or otherwise such lands or real estate as might be necessary therefor, and might carry and

conduct the pipes over or under any watercourse, or any street, turnpike, road, railroad, highway, or other way, in such manner as not to obstruct or impede travel thereon, and might enter upon and dig up any such road, street, or way for the purpose of laying the said pipes, and for maintaining and repairing the same.

By virtue thereof the city took portions of a strip of land from various owners, private persons, in different parcels, including the lands covered by Clinton Road, then owned by the heirs of Benjamin Goddard, and extending from Beacon Street to Boylston Street. in Brookline, and also including a parcel taken from the Boston, Hartford, and Erie Railroad Company, and occupied by its tracks at the time of the taking.

About 1869 the city laid down water-pipes in the strip so taken, and have since maintained them ; and a portion of the same, in which the pipes were laid and are now maintained, consists of a piece of land about 40 feet in width and about 425 feet long, lying between Sumner Road, so called, — a public way of the town, laid out on February 8, 1886, across the line of pipes, — and Boylston Street, also a public way of the town, beneath the surface of which last street the pipes extend and connect with other pipes of Boston, extending through the streets and other connecting streets to and into the city.

The length of the strip from Chestnut Hill Reservoir to Boylston Street is about 7,500 feet, and was partly private land and partly public ways ; and about 4,800 feet of this strip is entirely within the limits of the town, and pipes are laid therein beneath the surface of what was before the taking, and is now except as affected by the taking, private land.

About the time of the laying down of the plaintiff's pipes, the plaintiff constructed and it still uses, as necessary to the control and distribution of its water flowing through the pipes, a gate chamber, so called, affording access to three gates used for the control and distribution of its water, and the gate chamber is placed within the limits or boundaries of Clinton Road, which is a public way of the town duly accepted and allowed at a town meeting, January 15, 1889. This way extends from Sumner Road to Boylston Street, is fifty feet in width, runs longitudinally over the course of the location of the pipes between Sumner Road and Boylston Street, and includes within its side lines so

much of the strip forty feet in width, described in the taking, as lies between Sumner Road and Boylston Street. The location of Clinton Road contained the following reservation, to wit: " In said location of said road there is hereby reserved to the city of Boston and its assigns all the rights which said city now has to lay and maintain pipes beneath the surface of said way as so laid out for the conducting of water to said city, and also all other rights and easements in the soil beneath the surface of said way as so laid out which are now enjoyed by said city under the statutes of the Commonwealth, and especially under the provisions of chapter 131 of the Acts of 1865."

It further appeared that the town was proceeding to dig up the surface of the way to construct the same, without interfering or intending to interfere with the gate chamber; that Clinton Road forms a direct connection between Buckminster Road, a public way extending from Chestnut Hill Avenue to Sumner Road and Boylston Street; that the roof of the gate chamber is about four feet below the surface of the ground, and will be about two feet below the surface of Clinton Road when completed; that through this chamber run certain pipes of the complainant; that the bottom of the chamber will be twelve feet below the surface of the way when completed; that the pipes in the same will be twelve feet below the surface ; that in each of the pipes is a gate or shut-off for letting on or shutting off the water; that the gates can be operated from the surface of the ground, but that, if it is deemed desirable by the city to have and continue to maintain their present large-sized gate chamber and gates in their present position, the same can be so maintained, operated, and repaired as well after the construction of the street as now; that although the city has in some places laid water-pipes above the ground, the same cannot be said of the present construction ; that the pipes are below the surface, and it will probably never be necessary to lay them above it in the strip crossed by the way in question; that the gate chamber and gates can be maintained as well after the construction of the street as now; and that nothing in the laying out will require any alteration in the plaintiff's water-works beyond the making of a new crossing for the gate chamber at an expense less than the sum awarded for damages to the city by the laying out.

*A. J. Bailey,* for the plaintiff.

*M. & C. A. Williams,* for the defendant.

MORTON, J.　The question in this case is whether the right to exercise the power of eminent domain given to the city of Boston for the purpose of laying its water pipes excludes the exercise of the right of eminent domain by the town of Brookline for the purpose of laying out a way over the same land in which the city of Boston has laid the water-pipes. There is no doubt that land devoted to one public use may be taken by authority of the Legislature for another public use. *Old Colony Railroad* v. *Framingham Water Co.* 153 Mass. 561, and cases cited. This follows from the nature of the right of eminent domain. *Eastern Railroad* v. *Boston & Maine Railroad,* 111 Mass. 125. In the present case, however, the town of Brookline does not rely upon a special act authorizing it to lay out a way over the land taken by the city of Boston to lay its water-pipes in, but upon the general authority given to towns to lay out ways by the Pub. Sts. c. 49. Under such an authority a town could not lay out a way across a navigable river, or longitudinally along a railroad, because it would essentially impair or interfere with or be inconsistent with a public use already existing or specially authorized. *Kean* v. *Stetson,* 5 Pick. 492. *West Boston Bridge* v. *County Commissioners,* 10 Pick. 270. *Wellington, petitioner,* 16 Pick. 87, 103. *Springfield* v. *Connecticut River Railroad,* 4 Cush. 63. *Commonwealth* v. *Haverhill,* 7 Allen, 523. *Boston & Maine Railroad* v. *Lowell & Lawrence Railroad,* 124 Mass. 368. *Easthampton* v. *County Commissioners,* 154 Mass. 424. For the same reason, a corporation could not, under an act authorizing it to construct a railroad between two termini, locate its road along an existing highway, unless such authority was to be found in the act, or arose by reasonable intendment from the application of the act to the subject matter. *Springfield* v. *Connecticut River Railroad,* 4 Cush. 63. *Commonwealth* v. *Old Colony & Fall River Railroad,* 14 Gray, 93. *Housatonic Railroad* v. *Lee & Hudson Railroad,* 118 Mass. 391. On the other hand, if the location of a way over land already devoted to a public use would not be inconsistent or materially interfere with such use, there would seem to be no good reason, in the absence of any provision expressly or by implication forbidding it, why a way might not

be laid out over such land under the general authority given to
cities and towns or county commissioners. *Wellington, peti-*
*tioner,* 16 Pick. 87. *Boston Water Power Co.* v. *Boston & Wor-*
*cester Railroad,* 23 Pick. 360. *Boston & Albany Railroad* v.
*Boston,* 140 Mass. 87. *Easthampton* v. *County Commissioners,*
154 Mass. 424.

The question whether such interference or inconsistency
would arise is not to be settled with reference to every possi-
ble manner in which the land might be used for the purpose
for which it had been acquired, but with a reasonable regard
to the way in which it would naturally and reasonably be used
in putting it to that purpose. *Springfield* v. *Connecticut River*
*Railroad, ubi supra.*

Nothing in the St. of 1865, c. 131, under which the pipes re-
ferred to in this case were laid, or in the earlier acts to which
that was an addition, either expressly or impliedly prohibits
the laying out of a way over land taken to lay pipes in. Sts. of
1846, c. 167; 1849, c. 187; 1850, c. 316; 1859, c. 222.

The provisions in several of the acts relating to the digging
up of roads to lay, maintain, and repair the pipes, and subject-
ing the city of Boston to such regulations as the selectmen of
Brookline should prescribe as to the time, place, and manner of
digging up the streets, and making the city of Boston liable to
Brookline for expenses incurred by it through the want of re-
pair in any street due to the laying or maintaining or repairing
any pipes, are such as would naturally be adopted to protect the
city's rights, both as to existing streets and as to streets that
might afterwards be laid out over the pipes. The nature of
the interest or right acquired by the city of Boston in the land
taken does not require that the possession should be exclusive.
*Harback* v. *Boston,* 10 Cush. 295.

The facts found by the justice who reported the case show
that there is no inconsistency between the use of the land to lay
water-pipes in and its use as a way, and that the latter will not
interfere with the former. They also render it extremely im-
probable that the Legislature could have intended, by the special
act authorizing the city of Boston to take the land to lay water-
pipes in, to suspend the right of the town of Brookline to lay out
a way over it. It appears from the facts found, that, when the

street is worked to grade, the pipes will be twelve feet below its surface at the gate chamber. Although the city of Boston has in some places laid its water-pipes in embankments above the surface of the ground, there has been no such construction in the places where the pipes referred to in this case are laid. The pipes are all laid below the surface, and, so far as at present appears, it will never be necessary to lay them above the surface in the strip crossed by the way in question. The gate chamber and gates can be maintained, operated, and repaired as well after the construction of the street as now, and nothing in the laying out of the way will require any alteration in the complainant's water-works beyond the making of a new crossing for the gate chamber, which is now unsafe and out of repair, and which can be done at an expense of a few hundred dollars, and for less than the sum awarded for damages to said city by said laying out. The gate chamber will not be jeopardized in the slightest degree by the construction of the street. The city has more than twenty gates in the public ways of the defendant town, and all are operated from the surface, and no one is above the surface of the ground. There will be no engineering difficulty in adjusting the plaintiff's pipes and water-works as they now are, or any future pipes or works so far as now contemplated in said land, to said way, and without great expense. The strip of land taken by the city for its pipes extends from Chestnut Hill Reservoir to Boylston Street, a distance of about 7,500 feet, of which about 4,800 feet is entirely within the town of Brookline and is private land. The way laid out over it by the town forms a direct communication between Buckminster Road, a street extending from Chestnut Hill Avenue to a road called Sumner Road, and Boylston Street.

We think, upon these facts, that there is not now, and probably never will be, any material interference between the use of the land as a way by the town of Brookline and its use by the city of Boston for its water-pipes. It would seem that the Legislature hardly could have intended, without a greater necessity for it than appears to exist in this case, to exclude, for nearly a mile, the town of Brookline from laying out a street upon this land, although common convenience and necessity should require it to be done.

No objection against the laying out has been urged except what has been considered, and a majority of the court think the bill should be dismissed, and it is                    *So ordered.*