In re CONDEMNATION OF LAND AT NAHANT (UNITED STATES, Petitioner).

(District Court, D. Massachusetts. January 22, 1904.)

### No. 1,334.

1. EMINENT DOMAIN—CONDEMNATION OF LAND FOR PUBLIC USE—RIGHT OF TOWN TO COMPENSATION FOR EASEMENT.

   A town has a beneficial interest in an easement of aqueduct acquired by it for water pipes through private land, by whatever title it is held, as distinguished from property acquired by it for a strictly public use, and it is entitled to compensation when such property is condemned for another public use, whether by the state or United States.

2. SAME—EASEMENT OF AQUEDUCT IN HIGHWAY.

   In laying a water pipe under a public highway a town acts in the same capacity as a nonmunicipal water company, and its rights are no greater, and under the law of Massachusetts, on the taking of the highway for a superior public use, neither the town nor the company is entitled to compensation for the easement.

Proceeding by the United States for Condemnation of Land for the Purpose of Fortification.

Dunbar & Rackeman and William Hoag, for town of Nahant.

Henry P. Moulton, U. S. Atty., and William H. Garland, Asst. U. S. Atty.

LOWELL, District Judge. The United States is proceeding to condemn land in Nahant for the purpose of fortification. The proceedings are conducted under St. Mass. 1902, p. 289, c. 373. The town claims compensation in two cases: First. For an easement of aqueduct through private land, which easement it acquired by condemnation. The water pipe thus laid is used and needed not only to furnish water to the land taken by the present proceedings, but also to other parts of the town. Second. For its rights, however styled, which have arisen from its laying under highways in the land now taken water pipes used and needed for both the purposes above mentioned, and sewers which are necessary to its system of sewerage. By the statute referred to, Massachusetts has given to the United States the rights which the former possesses to condemn land for a public use. In re Certain Land in Lawrence (D. C.) 119 Fed. 453.

In the first case the government does not seriously dispute the right

of the town to compensation. As has often been said, a town may own real estate by the same tenures, yet in two different capacities: (1) In the case of streets, parks, and schoolhouses, for example, the use is strictly public, and there is no beneficial ownership in the town. This is true, it seems, whether the town has condemned an easement in the land, has acquired an easement therein by voluntary grant, or has taken title in fee simple. Easthampton v. County Commissioners, 154 Mass. 424, 28 N. E. 298, 13 L. R. A. 157. There the town's title was in fee. It is immaterial that the town can sell the land—a schoolhouse, for example—and use the proceeds as it sees fit. And in the case of a highway it makes no difference, I suppose, if the town has taken the fee in the land, as is now common practice in Boston. It is the nature of the use, and not the nature of the legal title, which determines whether the town's ownership is beneficial or not. (2) On the other hand, a town may hold real estate for uses not strictly public—a city hall or a cemetery, for example—in which estate the town has a beneficial interest, and for which compensation must be made if it is taken for another public use by state or nation. Mt. Hope Cemetery v. Boston, 158 Mass. 509, 33 N. E. 695, 35 Am. St. Rep. 515. Waterworks fall into the second class, and the easement of aqueduct vested in the town must be paid for as if that easement were the property of an individual or a private corporation.

A more interesting question concerns the town's right to compensation for aqueducts laid under highways. In New England Telephone Co. v. Boston Terminal Co., 182 Mass. 397, 65 N. E. 835, it was held by the Supreme Court of Massachusetts, whose decisions in this matter are binding upon this court, that corporations which, under authority of statutes and ordinances, have built and maintained conduits under public highways, are not entitled to compensation where the highway itself is taken for a public use deemed superior by the Legislature. Does the right of a town which maintains waterworks differ from that of a nonmunicipal water company? In laying a water pipe under a highway, both act in a like capacity. For manifest public convenience the town, which has charge of the highway, not as owner, but as delegate of the state, grants a license to one organization or the other to lay pipes under the highway for the supply of water. The town owns the pipes like a private owner, but not an easement in the land. In Sears v. Crocker, 184 Mass. ——, 69 N. E. 327, the Supreme Court declared that a subway held by the municipality "in its private or proprietary capacity for its own property" was so held only as a structure, and not as an easement in the land. The city's private ownership in the tunnel was declared to be like that of a private gas company in its pipes. The reasoning in Sears v. Crocker, combined with the decision in New England Telephone Co. v. Boston Terminal Co., disposes of the case at bar. To avoid misconception, it should be added that the owner of pipes laid under a highway in some cases may well recover for damage done to his right of aqueduct where the highway is discontinued. If a corporation, private or municipal, owns an easement of aqueduct through private land, and afterwards a highway is laid out over the same land in the line of the aqueduct, and if, still later, the highway is discontinued, and the land

is taken for a superior public use, the corporation must be entitled to compensation. To hold otherwise would require that upon the laying out of the highway the corporation should be paid damages as if its easement were then destroyed. See Boston v. Brookline, 156 Mass. 172, 30 N. E. 611. So, if a town should condemn an easement of aqueduct through private land, and should afterward lay out a highway over the aqueduct, it may be that the town would be entitled to compensation upon the taking of the land under the highway for a superior public use. This case presents no such question. As the purpose of national defense is paramount, the comparative value of the public uses in question does not arise here, as it did in the Lawrence Case.