INHABITANTS OF MONMOUTH *versus* ROBERT H. GARDINER.

A grant by a proprietor, to overflow his lands by a dam, cannot justify the overflowing of a public highway, existing upon the land at the time of the grant.

A remedy by action lies in favor of a town for damage sustained by throwing back the water upon the banks of its public highway by means of a dam, though the dam was erected for mill purposes only.

Such remedy for the town subsists unimpaired, though the owner of the dam may have obtained the permission of the proprietor to flow the land; — and though the town, at a reasonable expense, might have prevented the damage; —

and though other causes jointly with the dam contributed to occasion the damage; —

and though the dam was not the principal cause of the damage.

ON EXCEPTIONS from *Nisi Prius*, RICE, J. presiding.

CASE for overflowing a public road, which the plaintiffs were bound to keep in repair. The declaration charged that the injury was occasioned by a dam which the defendant had erected at the foot of the pond, upon the margin of which the road lay.

The *ad damnum* was alleged at $500. The suit was commenced in the late District Court, from which it was brought to this Court on demurrer, plea good, with leave to waive the demurrer and plead anew.

Upon the trial, on issue to the jury, it appeared that in 1812, the road began to be traveled, and has ever since been used as a road, and kept in repair by the plaintiffs. It lay 60 or 70 rods across a low and wet piece of land, "a swamp or bog," between the foot of Pease's hill and the Bunyaw stream. The stream run to the pond, and over it there was a bridge. The road was constructed by placing logs on the surface of the swamp, where necessary, and covering them with bushes, upon which earth was laid.

It also appeared that the defendant's dam was erected in 1845 or 1847, and that an earlier dam at the same place was built in 1834. The plaintiffs' evidence tended to show that the overflow and consequent injury to their road was caused by the defendant's dam.

The defendant's evidence tended to prove that, long before the erection of any dam, the road was frequently overflowed by the spring freshets, and rendered impassable and sometimes dangerous; — that it cost no more to keep the road in repair since the erection of the dam than before; — that the Bunyaw stream is raised suddenly by heavy rains; — that formerly one Hall had a dam and mills on the stream, two miles above the road in question, which flowed several hundred acres of low ground, and kept back the water, but that, about ten years ago, Hall's dam was wholly taken away, and there has since been nothing to keep back the water; — also to prove that the water-course at the bridge over Bunyaw stream was not sufficient to discharge the water passing down the stream; that about seven or eight years ago it was reduced in its width and capacity to discharge water; that its water-course and culverts were much choked up and obstructed by logs and drift stuff, and that, in consequence, the water accumulated in the stream above the road and overflowed the road; also to prove that the dam of 1834 would raise the water of the pond as high as the present dam would; that at the time of the erection of the dam, and previously, he had deepened the channel of the stream at the outlet, and that the wasteways of the dam where the gates were placed were two feet or more below the natural bed of the stream, whereby he was enabled to draw off the water of the pond more rapidly and to a lower stage than formerly could be done. He also introduced evidence tending to prove that there is a bridge across the outlet stream, 40 rods above the dam complained of; that the water-courses between the abutments of said bridge are too narrow to discharge the water freely; that the gates and waste-ways of the dam are sufficient to discharge all the water which can pass through said water-courses in times of freshets; that the water above the bridge is ordinarily higher than at the dam; that the object and purpose of the dam is not to raise or retard the water in the times of high water or freshets, but that, on the contrary, the gates are invariably kept open, and all the water of the pond is

discharged which the bridge above it allows to pass; that not
until the water falls to ordinary high water mark are the gates
closed — the object being to retain a supply of water for the
drought of the season; and that this stage of water does not
flow over the road in question; — also to prove that there
is a bridge at Hall's mill-dam, the water-way of which, be-
tween the abutments, is 24 feet wide, and that this bridge
had been overflowed, and that more water passes the Bunyaw
Bridge than Hall's.   In 1843, the owner of the land granted
to the defendant the right to flow it.

The defendant contended that he was not liable for any
injury which had been occasioned to the road in question,
and requested the Judge to instruct the jury as follows, viz : —

1. That the defendant had a legal right to erect and main-
tain the dam and to flow the land on each side of the road,
and that if, by means of such flowing, the road did absorb
the water thus raised on the sides of the road and thereby
become soft and more liable to be cut up and furrowed by
traveling thereon, that would not be an injury for which
the plaintiffs can maintain this action.

2. That, if the road could have been so constructed, at a
reasonable expense, as to be free from any injury by means
of flowing the adjoining lands, it was the duty of the town
so to construct it; and if they have neglected so to do, they
can maintain no action for any injury to it, which might
have been thus avoided.

3. That the right of the defendant to erect and maintain
the dam is as perfect as the right of the public to the ease-
ment in the road, and that each is bound to use his right in
a reasonable and proper manner, and so as to impair as little
as possible the right of the other; and that if, by the exercise
of the defendant's right, some injury to the road is inevitable,
which can be avoided by the plaintiffs at a reasonable ex-
pense, it is their duty so to avoid it.

4. That if the injury, which the road sustained, is attribut-
able in any degree to other causes than the erection of the
dam, this action cannot be maintained.

5. That, if several causes contributed to produce the injury, one of them being the dam, the action is not maintainable.

6. That, if the dam was not the principal cause of the injury complained of, the defendant is not liable in this action.

The first of the foregoing requested instructions was given, with this addition: " but if the road was actually damaged, by the flowing of the defendant, he would be liable for the damage thus occasioned." The others were refused.

The Judge instructed the jury that if they were satisfied that the road in question, without being flowed or damaged by defendant's dam, had been made and kept in repair by the plaintiffs for a period of more than twenty years, and had been used and traveled for that length of time as a public highway, the plaintiffs were bound to maintain it, and to make it safe and convenient for travelers, and could maintain an action for any injury which should, (after that period of time,) be done to it, and that, if the defendant by his dam did cause the water to flow back upon the road and do damage, for the damage thus occasioned, he would be liable, even though other causes independent of the defendant's dam might also occasion damage to the road.

The verdict was for the plaintiffs, damage being assessed at one dollar.

To the foregoing instructions and rulings, and refusals to rule, the defendant excepted.

The verdict being for less than twenty dollars, the defendant moved for costs, since the appeal taken by the plaintiffs from the judgment in the District Court, which motion the Judge refused to allow. To that refusal the defendant excepted.

The plaintiffs moved that they should be allowed full costs. The Judge denied the motion and ordered that quarter costs only should be taxed. To that order the plaintiffs excepted.

*Evans*, for defendant.

Admitting that the road has been injured by the absorption of water from the adjacent lands flowed by the dam, we contend that no action can be sustained therefor.

The defendant has done no more than he had a legal right to do. He has flowed his own lands and no more, and no negligence can be imputed to him. He has exercised his rights in a proper and reasonable manner, and if any injury has been sustained thereby, it is "*damnum absque injuria.*"

This falls within the principle of many adjudged cases. *Callender* v. *Marsh*, 1 Pick. 418 ; *Radcliff's Ex'rs* v. *Brooklyn*, 4 Comstock, 200 ; *Gerrish* v. *Union Wharf*, 26 Maine, 392.

The damages *alleged* are remote and consequential; the damages *found* are merely *theoretical;* for neither can an action be sustained. *Thompson* v. *Crocker & al.* 9 Pick. 59.

The public have an easement only in the *land taken* for a highway. The owner of the adjoining land may occupy and use it as he has been accustomed to do, or as it is capable of being used ; consequently he may flow it.

Upon the laying out of a highway, no damage would be allowed upon the assumption that the owner of the adjacent land would be debarred from flowing it, or otherwise using it at his pleasure.

It is the duty of the public or the town so to construct their road as to leave the owner the fullest enjoyment of his legal rights.

The jury must have found that other causes than the dam occasioned almost the whole amount of damage sustained, and in such case they should have been instructed, that no cause of action existed.

The neglect of the plaintiffs themselves may have *contributed* to the injury received, and instead of being received in mitigation of damages, it goes to the whole action.

But the instructions permitted the jury to find for the defendant only in the event that the *whole* damage was attributable to the imperfect construction of the road.

There was proof tending to show other causes for the damages sustained, such as the removal of Hall's dam, so that the instruction on that point was properly requested and was applicable. *China* v. *Southwick*, 12 Maine, 238.

The principle contended for is of daily application in suits against towns for injuries received on defective highways.

Where other causes than the neglect of the town *contributes* to the injury, the town is not held responsible. Why should not the same rule apply here? 5 Denio, 255 ; *Clark* v. *Syracuse and Utica R. Road*, 11 Barb. S. C. R. 112.

The plaintiffs were bound to construct their road so as to be free from the injury, if it could be done at reasonable expense. Every party is bound to the use of ordinary care, and it was a want of ordinary care not to construct it so.

If some trivial injury to the road does arise from the defendant's dam, it is inevitable on the part of the defendant, and if the plaintiffs can avoid it at a reasonable expense they are bound to do so, rather than deprive the defendant of the enjoyment of his own property.

The instructions were erroneous in allowing the jury to hold the defendant responsible for any injury done to the road. If the town had not repaired the injury, they could not recover. The directions should have been that, if the town had been put to expense in consequence of the injury occasioned by the dam, they might recover for such expenses, but not for any unrepaired injury.

*F. Allen*, on the same side.

The action is of novel impression. There has been no action in the State, for such damage, except that of *China* v. *Southwick*, 12 Maine, 238, and that one failed.

The plaintiffs were not bound to repair the road. They did it voluntarily. It was never legally established. They used it in subserviency to our right of flowing the pond. A road by user is not entitled to be *guarded* or *regarded*, as one located by authority.

The reported evidence shows that many causes, other than the dam, might have occasioned the injury ; at least that they might have concurred with the dam in doing it, such as the want of open water-courses, the removal of Hall's dam and the bridge at the foot of the pond. It was for the plaintiffs to show that such other causes did not do the damage or con-

tribute to it. Hence the fourth and fifth, requested instructions should have been given. So also should the sixth. For if the dam was not' the principal cause of the injury, something else was. One cause was enough. It is unphilosophical to seek more. Whatever that principal cause was, we are not accountable for it. The amount of the verdict shows that no *actual* damage was done by the dam to the plaintiffs. It will be time enough for them to sue, when they have done their own duty, and suffered from us, without contributing themselves to the injury.

*Emmons* and *May,* for the plaintiffs.

HATHAWAY, J. — In cases for flowing lands by mill owners, the remedy for the proprietor of the land is provided by the statute, and an action at common law cannot be maintained. Statute c. 126, § 28. *Stowell* v. *Flagg*, 11 Mass. 314. The defendant had the right to flow the land of the proprietors as provided by law, and in 1843, he acquired the unconditional right to flow it, so far as they were concerned. But that did not authorize him to obstruct or injure the *public highway*, which the plaintiffs were legally bound to keep in a condition safe and convenient for travelers.

The public have but an easement in the land upon which the road is made. The town is obliged by law to keep the road in repair, and cannot have the benefit of the statute remedy for flowing. *Calais* v. *Dyer*, 7 Greenl. 155.

In the case last cited, MELLEN, C. J. intimated, that an action on the case would be an appropriate mode of redress for the town.

The easement in the land, over which the road was made, must have been either paid for or given to the public at the time; or the road could not have been legally established. Although the title in the soil remained in him from whom the use was taken, yet the public acquired the right to pass over the surface, in the state in which it was, when first made a public road. *Callender* v. *Marsh*, 1 Pick. 430. The statute does not justify or excuse the erection of a dam in such

manner as to overflow a public highway already appropriated and in actual use. *Commonwealth* v. *Stevens*, 10 Pick. 247.

It would present a remarkable conflict of legislation, for one statute to authorize an indictment against a town for a *defective* highway, while another statute authorized an individual to render it defective.

If additional rights of flowing lands, in such cases, are deemed necessary, it is for the Legislature, not for the Court, to grant them.

The Court does not perceive any error in the instructions given by the Judge who presided at the trial, or in his refusal to instruct as requested.

This action was brought up, on the plaintiffs' appeal from a judgment, in the late District Court, on demurrer filed, by consent of parties, with an agreement to waive the same, and the defendant claims costs after the appeal, under the statute, c. 97, § 15, because the plaintiff did not recover more than two hundred dollars. By recurring to the statute it will be perceived that *such an appeal* is embraced in the exceptions, in that section of the Act, and not in the enacting clause. He is not therefore entitled to costs.

According to the decisions of the Court in *Sutherland* v. *Jackson*, 32 Maine, 80, and *Morrison* v. *Kittredge*, 32 Maine, 100, the plaintiffs are entitled to recover full costs.

The plaintiffs' exceptions are sustained.

The defendant's exceptions are overruled.

> *Judgment for the plaintiffs, on the verdict, with full costs.*

WELLS and HOWARD, J. J., concurred. SHEPLEY, C. J., concurred in the result.