CITY OF AUGUSTA *vs.* OLIVER MOULTON.

Kennebec.    Opinion June 5, 1883.*

</div>

<div align="center"><em>Right to flow lands.   Prescription.   Highways.</em></div>

In order to acquire by prescription a right to flow lands without the payment of damages therefor the land must have been flowed for some portion of each year for twenty consecutive years, doing damage to it to some appreciable extent.

The location and building of a public road, over and upon land over which an individual has the right to flow, by prescription, does not take away the right to flow, nor entitle the municipality upon which rests the duty to build and maintain the road, to damages done by the water flowing over or against it, to the extent thus previously acquired by prescription.

ON EXCEPTIONS and motion to set aside the verdict.

An action on the case to recover damages for injury to a road caused by the defendant's dams overflowing the same from September 25, 1866, to the date of the writ, September 25, 1876. The plea was general issue and brief statement setting up a right to flow, acquired by prescription, and the statute of limitations.

* Announced May 31, 1882.

The material facts appear in the opinion.

*W. S. Choate,* city solicitor, and *Herbert M. Heath,* city solicitor, for the plaintiff, cited: *Jordan* v. *Woodward,* 40 Maine, 317; *Tinkham* v. *Arnold,* 3 Maine, 120; *Hathorn* v. *Stinson,* 10 Maine, 238; S. C. 12 Maine, 183; *Seidensparger* v. *Spear,* 17 Maine, 123; *Gleason* v. *Tuttle,* 46 Maine, 288; *Underwood* v. *No. Wayne S. Co.* 41 Maine, 291; *Com* v. *Fisher,* 6 Met. 437; *Ellis* v. *Welch,* 6 Mass. 251; *Perry* v. *Worcester,* 6 Gray, 546; 6 Mass. 458; *Hancock* v. *Wentworth,* 5 Met. 451.

*Joseph Baker,* for the defendant, cited; *Underwood* v. *No. Wayne Scythe Co.* 41 Maine, 291; *Wood* v. *Kelley,* 30 Maine, 47; *Williams* v. *Nelson,* 23 Pick. 141.

SYMONDS, J. This is an action to recover for damages to a road in Augusta caused by water flowing back upon it from the defendant's dam.

In order to acquire by prescription a right to flow lands without the payment of damages therefor, the court ruled, "the land must have been flowed by the dam twenty years consecutively; that is, at some portion of the year for twenty years, doing damage to it to some appreciable extent." In support of the exception to this ruling the plaintiffs argue that, as the dam was built (in 1804) to obtain a head of water for a mill, and as the statutes then gave, and continued to give, to mill owners the right to flow the land of others, paying damages therefor, the flowage was by license of law, the land owner could not have prevented it, an original grant cannot be presumed from lapse of time, and prescriptive rights cannot be acquired in the manner which the ruling implies.

This was so held in *Tinkham* v. *Arnold,* 3 Maine, 120, which the plaintiffs cite. In *Hathorn* v. *Stinson,* 10 Maine, 224, 239, the court queries, but does not decide, whether the flowing of lands for the support of mills for long periods may not under some circumstances afford presumptive evidence, if not of grant, at least of license, so as to bar the claim for damages; but when the same case was again before the court, 12 Maine, 183, it was

held that such license cannot be presumed unless some injury to the land was caused by the flowing. In *Seidensparger* v. *Spear*, 17 Maine, 123, 128, the decision in *Tinkham* v. *Arnold*, seems to have been followed, the court holding that there was no presumptive evidence of a grant " when by law such grant was not necessary and when the conduct of all concerned was explainable on legal ground without such presumption." But about this time, in Massachusetts, the opinion in *Williams* v. *Nelson*, 23 Pick. 141, was delivered, opposed to that in *Tinkham* v. *Arnold*, and holding that the exercise by a mill owner of the right to maintain a dam and flow the lands of others for twenty years without damages paid or claimed was evidence of the right to flow " without paying damages and would bar the claim for them.

In *Nelson* v. *Butterfield*, 21 Maine, 220, 227, all these cases were elaborately reviewed, and in some degree reconciled by adopting precisely the rule which was given to the jury at this trial. It has been repeatedly affirmed. *Wood* v. *Kelley*, 30 Maine, 47 ; *Underwood* v. *North Wayne Scythe Co.* 41 Maine, 291 ; *Mansur* v. *Blake*, 62 Maine, 38.

The main question presented at the trial was whether the defendant had a prescriptive right, to flow the land, acquired before the road was located. If so, the ruling was, the right continued as before, notwithstanding the location and building of the road ; and the defendant was not liable for the damages done by the water flowing over or against it. To this exception is taken. But is it not clear that the ruling is correct? Suppose the premises from which the plaintiffs argue are conceded ;— that the right to flow was only a private easement which might lawfully be impaired in the building of the road, and not like a natural stream, the course of which is not to be unnecessarily obstructed or changed ; that the public acquired by the location the right to build a solid road without bridge or culvert, and thereby limit the right to flow ; that the only remedy for the mill owner for such diminution or loss of space for flowage is by claiming compensation for property taken for public purposes ;— suppose these premises are conceded, what prevents him from exercising the right, if any, that remains outside of the location, or subjects

him to any new conditions in the manner of using the right to flow between the mill and the road? He may still let the water flow where it has a right to flow till the road stops it, and it is not his duty to see that the road is so constructed as to stop the water without damage to itself. The location gave the public no rights outside of its limits. If there was a prescriptive right to flow the land for the use of the mill before the road was located, and a solid road was built, the right remained to flow against the side of the road next the mill, to the same height and under the same limitations as before; a right against which the public must guard in constructing the road. The case is not one where the two easements, that of the public and that of the mill owner, are inconsistent and cannot co-exist. It is entirely practicable to build the road, so as to withstand the force of the water. The location did not take away the right to flow. The case shows no attempt to do that.

The verdict having been in favor of the defendant upon the ground that he had acquired when the road was built the prescriptive right to flow without the payment of damages, there is no occasion to consider the question whether prior occupancy alone, although still accompanied with a liability to pay yearly damages for the flowing, would not under the statute, give the mill owner the superior right against such a location. The rulings at the trial in this respect were at least as favorable to the plaintiffs as they should have been. Under the directions to the jury contained in the charge, it is apparently impossible for the plaintiffs to have been prejudiced by the partial exclusion of evidence in regard to the Back Run dam. If damage to the road by water flowing back upon it was proved, and that without legal right, the jury were told to find for the plaintiffs, if the main dam either " caused the flowing of the water, or with the back dam contributed to it." The whole case shows that it was physically impossible, and must have been manifestly so to the jury, for the water to be forced back upon the road, without the main dam contributing to that result. Certainly argument was not required to show that the back dam alone could not do it. It is the argument of the plaintiffs that the main and

back dams, with the small, intervening island, should be regarded as one dam, two parts artificial and one natural, holding back the same stream. If so, the water would not flow to a higher level on one part of the dam than another, each part aids in detaining it, and substantially the same question is presented, as the charge presents, to the jury.

If it be said that an exception to the truth of the statements just made arises from the fact that the raising of the Back Run dam since the location of the road would diminish the space for the outflow of the water and might therefore, if proved, have tended to show a higher flow than that authorized by the right which had been acquired when the location was made, and so have charged the defendant with liability for exceeding the limits of his right, the answer is, that this is a point not taken at the trial. There is nothing in the case to direct the attention of the presiding judge to the effect of a change in the Back Run dam to cause a higher flow on the main dam. The admission of evidence was not claimed on that ground. Under the declaration, too, it was discretionary with the court to confine the plaintiffs to testimony relating to one dam, and they having elected the principal dam cannot object to the exclusion of evidence relating to the other.

We think the verdict is not against evidence in finding a prescriptive right to flow acquired before the location of the road, in such sense as to justify the court in setting it aside.

The mill was built in 1804. The road was located in 1833. When the evidence is reviewed in the light of the probabilities, and with the aid of facts of common knowledge, if it does not clearly sustain the finding of the jury that the meadows were so flowed during those twenty-nine years as to cause appreciable damage, it at least precludes any action of the court on the ground that such finding was manifestly wrong.

*Motion and exceptions overruled.*

APPLETON, C. J., WALTON, DANFORTH, VIRGIN and PETERS, JJ., concurred.