## STRUBLE *v.* REPUBLIC MOTOR TRUCK CO.

1. HIGHWAYS—COUNTY AND TOWNSHIP SYSTEM—STATUTES—EFFECT OF AMENDMENTS.

   The various amendments (Act No. 230, Pub. Acts 1895, Act No. 82, Pub. Acts 1907, Act No. 355, Pub. Acts 1913, Act No. 271, Pub. Acts 1917) to the original act (Act No. 149, Pub. Acts 1893), providing for the county and township road system, construed, and *held*, not to abolish the township road system in Arcada township, Gratiot county.

2. SAME—DAMAGES, ACTION TO RECOVER—REAL PARTY IN INTEREST.

   In an action under 1 Comp. Laws 1915, § 4464, to recover

---

[1]In 1 Am. Rul. Cas. Ann. pp. 827-1080, under the title "Health," may be found a valuable collection of cases relating to the powers of health boards.—REPORTER.

On liability for damaging highway or bridge by nature or weight of vehicles or loads transported over it, see note in 5 A. L. R. 768.

damages for injuries to the public highways of a township, the real party in interest as plaintiff is the township.

3. SAME—MISJOINDER—PARTIES—DECLARATION—AMENDMENTS.

In view of section 13, Chap. 12, of the judicature act (3 Comp. Laws 1915, § 12364), providing that no action at law or in equity should be defeated by the non-joinder or misjoinder of parties, there is no justification for the dismissal of an action for damages to township highways, brought under 1 Comp. Laws 1915, § 4464, in the name of the road commissioner of the township instead of in the name of the highway commissioner of the township, as provided in said statute, where the declaration was amended by adding the name of the highway commissioner thereto.

4. SAME.

If there is a misjoinder of parties plaintiff, upon proper motion the record may be so amended as to leave the commissioner of highways of the township the sole party plaintiff.

5. SAME—TREBLE DAMAGES—STATUTES—AVERMENTS—SUFFICIENCY.

Averments in the first count in the declaration that defendant motor truck company, by its officers and agents, "wilfully, knowingly and  *  *  *  with an utter disregard of the rights of the taxpayers of the township," damaged the highways of said township, contrary to the provisions of 1 Comp. Laws 1915, § 4464, held, sufficient to sustain an action under said statute, providing for the recovery of treble damages.

6. SAME—COUNTS—ELECTION—NEGLIGENCE.

Where the second count alleged the same misconduct, but did not rely upon the statute, they are not inconsistent, and plaintiffs could not be required to elect as between them, since under the first count such a case must be made as would warrant trebling the damages, while under the second, recovery might be had for negligence if the evidence warranted it.

7. SAME—CONSTRUCTION OF STATUTE.

The contention of defendants that liability under the statute should be construed to be confined to those cases where the damage to the road is done by drawing logs

or timber on the surface of the road or by some other like act, *held*, too narrow, the language of the statute being "by drawing logs or timber on the surface of any such road or bridge, or by any other act."

8. SAME—MOTOR VEHICLE LAW—LICENSE PLATES.
Whether defendants' trucks, which caused the damages to plaintiffs' highways, bore license plates or not, *held*, immaterial.

9. SAME—RIGHT TO USE ROADS NO DEFENSE TO WILFUL MISCONDUCT.
Even if it be conceded that defendants had a lawful right to test their trucks upon the public highways of the township, such right would be no defense in an action charging reckless, wilful and wanton misconduct, and reckless disregard of the rights of the township. ·

Error to Montcalm; Davis (Frank D. M.), J.  Submitted June 15, 1921.  (Docket No. 42.)  Decided December 21, 1921.

Case by Ed. M. Struble, road commissioner of Arcada township, Gratiot county, and another against the Republic Motor Truck Company, incorporated, and others for wilful injuries to certain highways.  Judgment for defendants on a directed verdict.  Plaintiffs bring error.  Reversed.

*George P. Stone, Charles H. Goggin,* and *Hugo E. Braun* (*William A. Bahlke* and *F. A. Miller,* of counsel), for appellants.

*Searl & Searl,* for appellees.

STONE, J.  This case was brought here by the plaintiffs on writ of error to review a judgment for the defendants entered upon a directed verdict based upon the opening statement of plaintiffs' counsel.  It appears from the declaration and opening statement of plaintiffs' counsel, which latter must here be treated

as true, that prior to 1902 the electors of the county of Gratiot voted upon the proposition of adopting the county road law, and it failed to carry, and was not adopted by said county. That the township of Arcada, Gratiot county, at its annual township meeting in 1902, by a vote of its electors adopted what is known as the township road system, whereby the management and control of all its highways, and of all its moneys raised for highway purposes, are placed in the hands of a commissioner of roads, elected for that purpose; and since that date the township has at all times constructed and maintained its highways and has raised and expended its highway funds under this township system. That after such adoption a resolution was passed by the township board of said township taking in, under the law, all of the public roads of the township. The township has also elected a highway commissioner, and had such commissioner at the time of the commencement of this suit. This action was begun by the plaintiff Struble, as commissioner of roads of such township, to recover damages for injuries to its highways inflicted by the defendants, as stated in the declaration in the case.

The declaration consists of two counts. In the first count it is alleged that the defendant Republic Motor Truck Company, Inc., was then and had been during the last 6 years engaged at the city of Alma, in said county, in the manufacture of motor trucks, and during the time alleged had manufactured and turned out large numbers of motor trucks each day. That the other defendants were then, and had been during said period, directors and executive officers of said company, and directed and managed all the affairs and business thereof, and directed and caused to be done all of the illegal acts complained of. That the said defendants, without any right so to do, unlawfully, wilfully, and with a reckless disregard of the rights

of the plaintiff during each of the years 1913 to May, 1919, took possession of, and appropriated to their own private use all of the public roads of said township (theretofore described), together with all the bridges thereon, and used the same as and for testing grounds, and for the testing of their motor trucks aforesaid, and ran out, upon and over all said public roads a large number, to wit, 25 motor trucks, each of which they heavily loaded with a great weight, to wit, 4 tons, and each of said motor trucks so loaded the defendants drove each day with great speed over and upon all said public roads and bridges, and thereby the said defendants, unlawfully, recklessly, wantonly and wilfully, and with an intentional disregard of the rights of the said township, tore up and destroyed all of said roads, and tore up and destroyed the foundations thereof, and threw the surfaces off said roads, made large and deep ruts and holes therein, and injured and destroyed the bridges, tore off and threw the planks therefrom, and otherwise greatly injured and impaired the good condition of said roads and bridges; and that by reason thereof the said township has been compelled to expend large sums of money in the necessary repairing and rebuilding of said roads, to wit: $2,000 per mile thereof, and must necessarily expend other large sums of money in the reconstruction, rebuilding and repairing of said roads, to wit, $2,000 per mile thereof; which acts were and are contrary to the provisions of section 4464, 1 Comp. Laws 1915, and whereby, and by the provisions whereof, the defendants are liable to these plaintiffs in damages to three times the amount of said injuries to said public roads.

The second count of the declaration alleges the same unlawful, reckless, wanton, wilful and intentional misconduct on the part of the defendants as

that contained in the first count, but makes no refer-
ence to the statute.

Upon the filing of the defendants' plea and notice
raising the question that the commissioner of roads
was not the proper official to bring such action, and
because section 4464, above referred to, names the
highway commissioner as the person entitled to bring
the action, the plaintiffs afterwards amended their
declaration by adding the name of Clyde Bishop as
highway commissioner, as an additional party plain-
tiff.

The case came on for trial, a jury was impaneled
and sworn, and counsel for plaintiffs made an opening
statement to the jury covering 14 pages of the printed
record.   In this statement counsel for the plaintiffs
stated in great detail that he would introduce evidence
to show the unlawful, wrongful, wilful and wanton
acts of the defendants alleged in the plaintiffs' decla-
ration.   His statement was to the effect that the de-
fendants had been guilty of wilfully, intentionally and
recklessly injuring the highways and bridges in said
township in the manner described in the declaration.
This opening statement is too lengthy to be here re-
peated.   We make one or two short quotations there-
from:

"We will show you they were reckless, they didn't
care what they did to the roads; that they knew they
were tearing them up; that they did it wilfully, know-
ingly, and did it with an utter disregard of the rights
of the taxpayers of that township, and of any damage
it might be to the road. * * * At times they
would get them in the ditch because of reckless driv-
ing or some other reason, and then they would spin
these wheels until those wheels would bury themselves
on the side of the road and upon the edge of the road
where they would tear the foundation out.   We will
show you that time and time again, after those trucks
would get buried there by the side of the road * *
* a fleet of them, or four or five or more of them,

would come down and hitch onto them for the purpose of drawing them out of the mud, and while they were in there these trucks, some of them extended up in the road, some on the side of the road, and they would draw them out.   *   *   *   Sometimes there would be six or seven of these trucks hitched together in the mud, operating there, plowing up and digging out the highways, these highways I have spoken to you about that cost them this money.   They destroyed the highway.   We will show you at some times if another truck was not near, they would get spades and they would dig a great hole in digging the truck out, dig it out without any regard to what they did to the road; just dig a great hole in the road that you could bury a horse in, and go away and leave it, and perhaps send word to the highway officers that they could come there and fill up the hole.   We will show you that they did that.   *   *   *   We will show you that this was done recklessly, wantonly, wilfully, and, as I said before, with an utter disregard to the rights of the township and its roads.   We will show you that although notified, they would not stop it; they refused to stop it, but simply continued in that manner, put these fleets of heavy trucks out upon the road and have them run in the manner I have stated; that this reckless, fast and furious driving would hurt the road, hurt the culverts and hurt the bridges."

This and much other similar wilful and wanton misconduct on the part of the defendants and their servants are claimed in the opening statement of counsel.

At the conclusion of this statement, and upon motion of defendants' counsel, the court directed a verdict for the defendants for the reason that there was no right of recovery in the plaintiffs under their declaration, even if the facts should be shown as stated by counsel in his opening statement, upon which ruling error is assigned.

The facts constituting plaintiffs' cause of action are conceded to be as stated in plaintiffs' opening state-

216—Mich.—20.

ment.   It was also stated by counsel in such statement that the defendants' trucks, while being so tested upon the highways, bore no license plates.

At the trial it was contended by the defendants that neither of the plaintiffs was entitled to bring the action, and that if any action could be maintained it should be brought in the name of the supervisor of the township.   A reference to the record will show that this point was urged as one of the reasons for a directed verdict, and it is the subject of the 1st, 2d and 4th assignments of error.   On the other hand, it was the contention of the plaintiffs that the suit was properly brought, and by the proper officials.

It was also the claim of the defendants that under the statute the township system had been abolished. It was conceded in the course of the opening statement that the county of Gratiot did not adopt the county road system previous to 1913.   A careful examination of the many acts of the legislature here involved brings us to the conclusion that the township system in Arcada township has not been abolished, and that the action may be maintained in the name of the highway commissioner of the township.   We shall not attempt to quote from the many acts of the legislature here involved.   It appears, however, that the original act creating the present county and township system of roads was Act No. 149, Pub. Acts 1893 (1 Comp. Laws 1915, §§ 4347-4377).   This act, as originally passed, while providing for the county and township road system, did not provide for any township system to be operated under and through its own officers.

The legislature later passed Act No. 230, Pub. Acts 1895.   This act provides that townships may (except in certain counties in the upper peninsula) in counties where the question has been submitted and has failed to carry, adopt the township system.   This act added

sections 26 and 27 to the county road system act above referred to.  An examination will show that Act No. 230 provided that any township that should adopt the so-called system and raise money and build roads in good faith should not, without its consent, by a two-thirds vote, be liable to any tax for a county road system, should the county in which said township was situated afterwards adopt the county road system.

The legislature, by Act No. 82, Pub. Acts 1907, amended the last-named act, and changed the necessary vote from a two-thirds vote to a majority vote of the electors necessary to abolish the township system.    It retained the provision that the township should not be liable for any county road tax which had adopted the township system, and further provided that "no township in the State not now in operation under this system shall adopt it."    The legislature again amended section 31 by Act No. 355, Pub. Acts 1913, by adding the proviso thereto:

"*Provided,* That the county in which said township or townships are situated shall have adopted the county road system previous to 1913."

This amendment was approved May 13, 1913.    The proviso applied to all townships in the State then operating under the township system.    The effect of the amendment of 1913 by adding this proviso is what has led to much controversy in this case.    Defendants' counsel contend that this proviso repealed the entire township road system, although they claimed that it was first adopted in 1917.    Counsel for plaintiffs upon this point say, and, we think, correctly:

"It is very clear by this amendment, that what the legislature had in mind was to discourage its then declared policy by the act of 1907, above referred to, of abolishing or eliminating the township system of roads, which was provided for by Act No. 230 of the Public Acts of 1895, by taking from the township

maintaining the township system the exemption from a tax for the county road system. It did this by discouraging townships to maintain a township system by making them liable during such time for a tax for maintaining the county road system. It was then found that there was no machinery provided in the statute of 1913 for repealing the township road system; so the legislature by Act No. 271 of the Public Acts of 1917, re-enacted section 31, exactly as it was left by Act No. 355 of the Public Acts of 1913, by providing machinery whereby townships could abolish the township system. Judge Searl says that this act 'whatever construction this court may put on the proviso of 1913' completely abolishes the township system. He is clearly wrong in this contention. In the amendment of 1917 section 31 was left exactly as it was by the amendment of 1913, but added the machinery or method whereby the township might rescind the township system. * * * It is too clear for argument that the proviso which was first introduced by the amendment of 1913 was intended to apply only to the reference made to a county road tax. If the legislature wished to abolish the township road system in townships having it in 1913, it would have been easy to so provide. To so construe this proviso makes the whole history of this legislation without purpose. The township system has not been abolished in townships that adopted it previous to the 1907 amendment, unless it has been done by the vote of the electors of the township in the manner provided by these statutes.

"Under the averment of the declaration and upon the opening statement of counsel on the trial of this case, which is taken as true for the purpose of argument, the township system was in force in the township of Arcada at the time this suit was brought and fixes the rights of the parties in this case."

As to the parties plaintiff, it may be said that the real party in interest as plaintiff in this case is the township, the object being to have and recover for the benefit of the highway fund depleted by the expense sustained and to be sustained by the repair of the in-

juries alleged to be caused by the acts of the defendants.

Section 13 of chapter 12 of the judicature act (3 Comp. Laws 1915, § 12364) provides:

"No action at law or in equity shall be defeated by the nonjoinder or misjoinder of parties. New parties may be added, and parties misjoined may be dropped, by order of the court, at any stage of the cause, as the ends of justice may require."

It is said that this provision of the statute was taken from the New Jersey practice act of 1903. Referring to it Cummins & Beecher say, page 8:

"For the practice of allowing an action to be defeated by reason of the nonjoinder or misjoinder of parties has been substituted the practice of dropping parties misjoined and bringing in parties who ought to have been joined. In the case of misjoinder a motion to dismiss as to the parties misjoined would be proper, or in case it appear upon the trial that any person was an improper party, an order dismissing the suit as to him would be entered.

"At any stage of the case if it appears that a necessary party has been omitted, an order should be made making him a party and that he be brought in in the usual way."

If there was a misjoinder of plaintiffs here, that fact was no justification for dismissal of the case. By the terms of the act of 1895 adding sections 26 and 27 it was provided that when a township adopted the township system the county system became applicable to the township; and it was for this reason that the commissioner of roads was elected. But the township already had a commissioner of highways, and, in our opinion, the action could properly have been brought in his name originally. There is no doubt that upon proper motion the record may be so amended as to leave the commissioner of highways the sole party plaintiff here. We see none of the ob-

stacles, as suggested by defendants' counsel, standing in the way. We are of opinion that the first count in the declaration may be treated as a count under section 4464, 1 Comp. Laws 1915, which reads as follows:

"Whoever shall injure any bridge maintained at the public charge, or any public road, by drawing logs or timber on the surface of any such road or bridge, or by any other act, shall be liable in damages to three times the amount of the injury, to be recovered in an action of trespass or on the case, by the commissioner of highways of the township within which the injury was done, in his name of office, to be expended by him in the repair of roads in his township."

Whether the evidence in the case will be sufficient to bring it under the terms of this statute is a question depending upon the evidence offered upon the trial of the case. This statute has been construed by this court. It is true that it has been held to apply only to cases where active injuries or cases of wilful misconduct of the kind enumerated in the statute are involved. See *Shepard* v. *Gates*, 50 Mich. 495; *Overseer of Highways* v. *Pelton*, 129 Mich. 32. There is certainly sufficient of active injury and wilful misconduct here charged.

It is the contention of counsel for the defendants that in construing this statute we must bear in mind that the injury must be by drawing logs or timber on the surface of the road, or it must be some other like act. The language of the statute is, "or by any other act." Counsel cite numerous Michigan cases to support their contention, among which are *McDade* v. *People*, 29 Mich. 50. We call attention to the case of *People* v. *Gogak*, 205 Mich. 260-265, where this subject is considered. This claim of counsel is too narrow.

We do not think that the plaintiffs should be re-

quired to elect as between the counts.   These counts are not inconsistent.   Under the first such a case must be made as would warrant a trebling of the damages; while under the second a recovery might have been had for negligence if the evidence should warrant it.

We do not deem the question whether or not the trucks bore license plates of any importance in the case.   The injury to the highway, if any, would have been as great in the one case as in the other.

Coming to the question of general damages, counsel for the plaintiffs state that they have been unable, after diligent search, to find any cases where such a private use was made of a public highway as in this case and involving such injuries, to the structure of the road, as resulted in this case.   We have spent considerable time in an independent examination of the authorities, and agree with counsel that the case must be adjudged under the general principles governing parties in the use of public highways.

We must recognize the fact that the motor truck has inaugurated a new era in transportation.   We must keep in mind, however, that under the opening statement of counsel these trucks were not being used in transportation or travel.   When engaged in legitimate traffic those vehicles operate on a right of way maintained by the State and municipalities, and at the expense of the community.   As indicating the policy of the State, attention may be called to Act No. 132, Pub. Acts 1917, regulating the use of motor vehicles on the public highways, and providing punishment for violation thereof.   The plain purpose and intent of the act is to protect the highways from unlawful injuries and destruction by such vehicles.   It should be borne in mind that here the defendants are charged with an unlawful and serious injury to the highways, not in ordinary traffic, but done in wanton

and reckless disregard of a plain duty of user. The primary purpose of a highway is for public passage and travel. The following authorities bear upon this subject:

Berry on Automobiles (3d Ed.), § 149:

"Unreasonable Use of Highways. The use of the public highways is restricted to a use with due care and in a reasonable manner. It has been held that, aside from legislative enactment, the fact that one uses vehicles heavier than customary does not give rise to a cause of action against him; and that an unreasonable use must be more than the weight of the vehicle and its load, and must relate to the manner of the use." Citing *Sumner County* v. *Transportation Co.*, 141 Tenn. 493 (213 S. W. 412, 5 A. L. R. 765).

Berry on Automobiles (3d Ed.), § 912:

"Racing and Testing Automobiles in Street. A city was held liable for injuries resulting from the racing and testing of automobiles in its streets at an excessively high rate of speed, which the city permitted to be done. This on the theory that the streets were not reasonably safe for ordinary traffic and use. In part the court said:

" 'It is suggested by the city that the dedication of the public ways to automobile racing lay wholly outside of the powers of the corporation, for which the corporation is not liable. That is another way of saying the corporation is liable if the authorities act within the law, and is not liable if the authorities act without the law. The prime duty of any city is to keep its streets clear for the public travel. The incumbrance of the streets with automobiles running at a dangerous rate of speed, just for practice, is a violation of that prime duty. To answer that the mayor and council had no authority to authorize such a use of the streets, is to admit the wrong.

" 'It is true there are decisions from other jurisdictions which sustain this view of the respondent, but they do not commend themselves to our judgment, and they do not express the general rule of law. * * * We are of the opinion that the street thus dedicated by the authorities to a hazardous use was not then reasonably safe for prime purposes.' *Burnett* v. *City of Greenville*, 106 S. C. 255 (91 S. E. 203)."

In *Commonwealth* v. *Allen,* 148 Pa. 358 (23 Atl. 1115, 16 L. R. A. 148), reading from the headnote:

"A man may lawfully use the public highway in the transaction of his legitimate business, either for travel or for transportation, but such use must be reasonable, and the question of its unreasonableness is to be determined by the jury."

The court said:

"A man may lawfully use the public highway in the transaction of his legitimate business either for travel or transportation, but it is common  law and common sense that he must use it in a reasonable manner and not interfere with its reasonable use by other citizens. And whether a particular use is an unreasonable use and a nuisance is a question of fact to be submitted to a jury.  *City of Allegheny* v. *Zimmerman,* 95 Pa. 287."

In *Bidelman* v. *State,* 110 N. Y. 232 (18 N. E. 115, 1 L. R. A. 258), the headnote reads as follows:

"As, by statute, the primary responsibility for the maintenance and repair of highway bridges in a town is cast upon the town,  *  *  *  it has such an interest in the preservation of such a bridge as gives it a right of action against any person who, intentionally or by negligence, injures it, making repair or rebuilding necessary, to recover the expense incurred."

The court said:

"The town was under an obligation to keep in repair its bridges and make them suitable for public travel, so that it shall incur no liability for their defects, and it may have compensation from one who wrongfully, by negligence or otherwise, makes such repair necessary and so exposes it to the expenditure of money."

*Egerly's Case,* 3 Salk. 183:   The overloading of a wagon, thus damaging a highway, is a public nuisance.

Speaking of civil liability it is said in 15 Am. & Eng. Enc. Law (2d. Ed.), p. 507.

"Counties, towns, and cities which are bound by law to maintain and keep in repair highways within their limits, have a property interest therein, and may recover damages of any person who wilfully or negligently destroys or injures such ways." Citing *Inhabitants of Monmouth* v. *Gardiner*, 35 Me. 247; *City of Augusta* v. *Moulton*, 75 Me. 284; *Inhabitants of Brookfield* v. *Walker*, 100 Mass. 94; *Woodring* v. *Forks Township*, 28 Pa. St. 355 (70 Am. Dec. 134) ; *Town of Monroe* v. *Lumber Co.*, 68 N. H. 89 (39 Atl. 1019).

Criminal liability is also asserted in numerous authorities.

In Elliott on Roads and Streets (1st Ed.), p. 316, it is said:

"We have had frequent occasion to say that an easement of the public in a rural road consists in the right to use it for the purpose of passing and repassing."

*Louisville, etc., R. Co.* v. *Whitley County Court*, 95 Ky. 215 (24 S. W. 604, 15 Ky. Law Rep. 734, 44 Am. St. Rep. 220), is to the effect that a county may maintain an action to recover damages for the injury or destruction of one of its highways.

In *Lawrence County* v. *Railroad Co.*, 81 Ky. 225, it is held that under their statute the county was the real party in interest, holding and controlling the highways and bridges therein for the benefit of the public, and that it has such interest in the highways and bridges as entitles it to an action in its own name for any injury thereto. The court said:

"We need not consume time to demonstrate that an unlawful and wrongful obstruction of the highways and bridges constitute an injury for which the law gives a remedy."

In *Hooksett* v. *Amoskeag Manfg. Co.*, 44 N. H. 105, it was held that a town has such an interest in the roadways and bridges which it erected on its public highways that it can maintain an action on the case

against a wrongdoer for the obstruction of such a roadway or bridge. That was a case of flowage of a highway by the defendant, and, while not directly in point, the principle is the same as the one here contended for by the plaintiffs.

*City of Concord* v. *Burleigh*, 67 N. H. 106 (36 Atl. 606), holds that, towns and cities, being bound by law to maintain and keep in repair the highways within their limits, have a property interest therein and may recover damages of any person who wilfully or negligently destroys or injures the ways.

In *Town of Monroe* v. *Lumber Co.*, *supra*, it is held that towns may sue for the obstruction or destruction of highways in their limits. It seems to have been a case of flowage. The court said:

"It is useless at this day and in this jurisdiction to discuss the proposition that towns have not such an interest in the highways within their limits as to enable them to maintain an action on the case, for their destruction or obstruction."

We refrain from further citation of authorities. Let it be conceded that the defendants had lawful right to test their trucks by driving them upon the public highways in the ordinary manner trucks are driven in the transportation of persons and property over the public highways, still such right can be no defense or protection to the defendants where the facts, as stated, and for the purposes of this case are conceded, show that the acts of the defendants in destroying and injuring the highways in question were characterized by reckless, wilful and wanton misconduct, and reckless disregard of the rights of the township.

Upon the whole record we are of the opinion that the court erred in directing a verdict and judgment for the defendants. What the evidence may disclose upon another trial we do not know. For the errors

pointed out the judgment of the circuit court is reversed and a new trial granted, with costs to the plaintiffs.

STEERE, C. J., and MOORE, WIEST, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.