INHABITANTS OF CHESHIRE *vs.* ADAMS AND CHESHIRE RES-
ERVOIR COMPANY.

Berkshire.   Sept. 16, 1875. — Jan. 28, 1876.   AMES, DEVENS & LORD,
JJ., absent.

A town, within the limits of which existing public ways have been changed by the county commissioners under the St. of 1873, c. 144, and which has no ownership in the soil of such ways, does not come within the provisions of § 2, as a person or corporation that has sustained damages by reason of the alterations, changes of grade or repairs in such ways; and the objection that such damages cannot be assessed may be taken at the trial before a sheriff's jury summoned to assess the damages.

PETITION under the St. of 1873, c. 144, for a sheriff's jury to assess the damages caused to the petitioner by the doings of the county commissioners in permitting the respondent to raise a dam owned by it so as to injure certain roads which the petitioner was bound to keep in repair. The jury, under the instructions of the presiding officer, returned a verdict for the petitioner. The verdict was certified to and accepted by the Superior Court; and the respondent appealed. The facts of the case appear in the opinion.

*T. P. Pingree & J. M. Barker*, for the petitioner.

*H. L. Dawes*, ( *W. T. Filley* with him,) for the respondent.

ENDICOTT, J.   The question here raised involves the construc-
tion of the St. of 1873, c. 144, which purports to be an act in addi-
tion to the acts for the erection and regulation of mills. At the time of its passage the owner of a dam had no authority under

the mill act, Gen. Sts. *c.* 149, to flow any town way or highway. Persons whose land is overflowed, or otherwise injured by a dam, may obtain compensation therefor ; but there being no provision for subjecting land devoted to the public easement of a way to flowage, or regulating in what manner it may be done, it is to be presumed that no encroachment on such public right was intended by the mill act. It has, therefore, been held, that a mill-owner, who by his dam overflows a public way, is liable to be indicted for the maintenance of a nuisance. *Commonwealth* v. *Stevens*, 10 Pick. 247. *Commonwealth* v. *Fisher*, 6 Met. 433. And when a public way is rendered unsafe by reason of such flowage, the town may be indicted for want of repair. In an action of trespass on the case to recover expenses incurred by the town of Andover in repairing a highway, which had been overflowed and greatly injured by the water of the defendant's mill-pond, it was held that the town had no remedy under the mill act, Rev. Sts. *c.* 116, Gen. Sts. *c.* 149, and that the action could be maintained. *Andover* v. *Sutton*, 12 Met. 182. There is no remedy under the mill act, because that gives a remedy only to owners of land whose land is flowed.

It appears in this case that there was no evidence of any ownership by the petitioner in the land over which the roads in question are located, other than the general ownership, possession and control pertaining to towns over ways legally located and constructed within their limits, and the duty imposed by law in keeping the same safe and convenient for travel. A town does not in such case own the land over which a way passes. *Perley* v. *Chandler*, 6 Mass. 453. *Millbury* v. *Blackstone Canal Co.* 8 Pick. 473. Nor does it own the easement created by the construction of the way. That belongs to the public. The town must maintain the way because the general law imposes that duty, but in its corporate capacity it has no property in the land under the way, or in the easement of the ways within its limits, and so has no remedy under the mill act as a corporation whose land is flowed or otherwise injured by a dam. Gen. Sts. *c.* 149, § 4. But, when compelled to repair a defect caused by flowing, a direct damage to the town thus ensues, and it may maintain an action to recover the expenses thus incurred, from the person who created the nuisance in the same manner as against any

other person who creates a defect in the highway, which has caused the town to incur expense in the discharge of its corporate duty. *Lowell* v. *Boston & Lowell Railroad*, 23 Pick. 24. And in *Andover* v. *Sutton, ubi supra*, it was held that while the town could recover from the defendant the expenses of repair, it could not recover costs paid by the town on an indictment against it for want of repair caused by the acts of the defendant, because the costs were incurred in consequence of the town's neglect to perform a duty imposed by law.

A mill owner, therefore, cannot flow a public way by his dam, and can be indicted if he does so. The town in which the way so flowed is located has no remedy under the mill act, for the injury caused by such flowage, but can maintain an action of tort against the mill owner, and recover such sum as it has been obliged by law to expend in repairing such injury.

The St. of 1873, *c.* 144, is intended to give additional powers to mill owners under the authority and direction of the county commissioners. It is provided in § 1, that any person who desires to raise, erect or maintain a dam for mill purposes at such height or in such manner as to overflow or otherwise injure an existing public way, may apply to the county commissioners, setting forth the height at which it is desired to maintain such dam, and the ways which may be injured thereby, and asking for the alteration, change of grade or specific repairs of such ways; and the commissioners, after a hearing on the petition, may order such alteration, repairs or changes of grade " as will, in their judgment, enable the petitioner to raise, erect and maintain such dam, without overflowing or otherwise injuring such ways; and they may give written direction and authority to such petitioner to make at his own expense such alterations, changes of grade and repairs within a reasonable time." It is further provided in § 2 that notice of the hearing shall be given to the towns in which the ways are situated, and to the owners and occupants of lands affected thereby, in the same manner as notice of the laying out of high-ways is given ; and " the commissioners shall assess and order to be paid by the petitioner all damages sustained by any person or corporation by reason of the alterations, changes of grade or repairs ordered by them ; and any person or corporation aggrieved by such assessment," may have the damages assessed by a jury, as

in the laying out of highways. By the provisions of this act, therefore, when an order has been passed by the county commissioners directing alterations, changes of grade and repairs in existing public ways, and the petitioner has complied in all respects with the order in making the changes, he may raise his dam to the height allowed, and flowage to that height is lawful.

The question presented is, whether a town, within the limits of which existing public ways have been changed by the commissioners, comes within the provisions of § 2, as a corporation that has sustained damage by reason of the alteration, changes of grade or repairs in such ways.

Under the mill act, large privileges are conferred upon a person erecting a dam upon his own land for mill purposes. In *Bates* v. *Weymouth Iron Co.* 8 Cush. 548, 553, Chief Justice Shaw says: " It is a provision by law, for regulating the rights of proprietors on one and the same stream, from its rise to its outlet, in a manner best calculated, on the whole, to promote and secure their common rights in it." See *Lowell* v. *Boston*, 111 Mass 454. As by the existing provisions of law no dam could be maintained in such manner as to injure or interfere with any existing public way, it is to be presumed that when the Legislature passed the St. of 1873, it had in view an extension of the powers and privileges conferred by the mill act, by authorizing changes in public ways under the direction of a tribunal already clothed with authority over that subject matter. New powers being thus conferred upon the commissioners, they are to adjudicate and determine in a given case, whether there is occasion for the exercise of the authority given; or, in other words, whether alterations can be made in the ways to be affected by the dam without seriously affecting the public convenience and necessity in the use of those ways. If they so determine, they may order such alterations to be made as are necessary to enable the petitioner to raise his dam " without overflowing or otherwise injuring such ways." This provision is important, for the commissioners are to make the proposed alteration, so that in their judgment the way cannot be overflowed or injured. At the hearing when these alterations are to be determined, the town is to have notice and may be heard upon that matter. The question, therefore, is to be settled by a board of public officers having

in charge the public interests, and the power to determine the convenience and necessity of the public in relation to ways, and their adjudication as to the changes to be made and the manner in which the ways are to be altered, repaired or built is conclusive.

The ways when thus altered are public ways, and the duty of maintaining them rests upon the town under the general provisions of law, as in any other case, where a change in a way is ordered by the commissioners. Whether a way is laid out by a town, or by the county commissioners, or by the Legislature, as in those cases where turnpikes have been made highways by acts of the Legislature, the obligation to keep it in repair rests upon the towns within whose territorial limits it lies. The duty to keep it in repair does not depend upon the manner in which the way is laid out, or the alteration is effected, or the form of the proceeding, but arises from the fact that it is a public way within the town limits. An increased expenditure may result from such laying out or alterations, but that is part of the public burden. In laying out turnpikes, or bridges, as highways, by the Legislature, express provisions have sometimes been made, whereby the towns in which the highway lies may be relieved in part of the expense of maintaining such ways by imposing it upon other towns or cities, or upon the county. But in the absence of such provision, the duty of maintaining the highway is upon the town. See *Northampton Bridge Case,* 116 Mass. 442.

Upon examination of this statute, we find no provision which expresses or implies that the town can recover from the respondent for the increased expense cast upon it by the alterations in its ways ordered by the county commissioners. Such expenses are not damages sustained by Cheshire within the meaning of § 2. The damages which the commissioners may assess under that section to persons and corporations must be taken to mean damages to property, and so can only be assessed to those persons or corporations who have sustained such damage by reason of the changes in the ways, and cannot be held to include municipal corporations, which having in their corporate capacity no property in the land, covered by the ways, or in the easements created thereby are only damaged by the increased burden of repair which is imposed by general law.

The objection to the jurisdiction was taken before the sheriff's jury, before any evidence had been offered, or hearing had, and we are of opinion that the respondent is not precluded from raising this question, because it could have been raised on a petition for *certiorari* to quash the proceedings of the county commissioners in ordering a warrant to issue for a jury. It is a question of jurisdiction, whether the county commissioners or a jury have authority to assess such damages, and the objection may be taken at the trial before the jury. *Verdict set aside.*