Grafton, }
June, 1894. }

MONROE *v.* CONNECTICUT RIVER LUMBER CO. $\mathcal{G}$ *a.*

A town may maintain an action on the case for the obstruction or destruction of highways within its limits.

A declaration alleging as the cause of injury distinct acts of negligence, by different defendants, at separate times, is not demurrable. Under such declaration, evidence against one defendant or all is admissible; and the introduction of evidence against one is not an election to proceed against him alone.

If a witness has made statements in writing inconsistent with his testimony on the trial, they may be read, and he may be questioned in relation thereto. In such case the probable truth or falsity of either statement is legitimate matter for argument.

In an action by a town to recover for the destruction of a highway, the increased expense of maintaining a new highway in a different location, is one of the elements of damage.

It is no defence to an action for injuries caused by an insufficient dam, that its owners were not notified of its unsafe condition.

Upon the question of due care in the management of a drive of logs, it is not error to instruct the jury that they may properly consider what their own conduct would have been under like circumstances.

CASE. The declaration alleged, in substance, that the defendants, Van Dyke and McFarland, in June, 1884, negligently repaired and in part rebuilt a dam owned by them on the Connecticut river; that Van Dyke sold his interest to the Connecticut River Lumber Company in 1885, but has since been the president and general manager of the company, and as such has had control, management, and supervision of the dam, which has ever since been negligently kept and maintained by the defendants; that in May, 1888, the defendant company negligently ran a large number of logs over the dam, Van Dyke directing and controlling the business; that by the negligence of the company and Van Dyke, a large jam of logs formed upon and above the dam; that in consequence of the jam and of the negligent construction and maintenance of the dam, it gave way and allowed the water and logs to escape, causing a washout of highways in the plaintiff town, compelling the town to repair certain highways and to build new ones, the latter necessarily being less favorably located and more expensively maintained than those they replaced.

The defendants demurred, because "there are no allegations of any joint act causing damage, nor of any separate act causing

damage, but the allegation is of separate acts at different times participated in by part of the defendants, which caused the damage in conjunction with other separate acts committed by other defendants"; and because "the plaintiffs have no legal interest in the highways sufficient to authorize them to maintain a suit." The demurrer was overruled, and the defendants excepted.

Trial by jury. Verdict for Van Dyke and McFarland and against the Connecticut River Lumber Company.

The plaintiffs claimed, and introduced evidence tending to prove, that Van Dyke owned the dam for several years prior to February 17, 1886, when he conveyed it to the company; that McFarland, since June, 1883, had a right to a part of the water; that Van Dyke and McFarland, at different times and independently of each other, repaired and rebuilt portions of the dam, and this work was negligently done; that the company, after the purchase from Van Dyke, were engaged in running logs down the river; that in May, 1888, the company negligently permitted a jam of logs to form, which brought an additional strain on the dam, and knowingly maintained the dam in this unsafe condition; that the dam gave way on account of its insufficiency to withstand the strain; that the washout which resulted was caused by the combined and concurrent negligence of all the defendants, and in the absence of such negligence by any one of them would not have happened. The company excepted to evidence of the separate negligence of Van Dyke and of McFarland in repairing and rebuilding the dam, also to evidence of their own negligence in the management of logs, not participated in by all the defendants, and to an instruction to the jury, that, if the plaintiffs' claims were found to be sustained by the evidence, they were entitled to a verdict against all the defendants.

On the cross-examination of Waite, a witness for the defendants, the court ruled that the plaintiffs' counsel might read such parts of a previous statement in writing made by the witness as he desired to question him upon, and such parts only, and the defendants excepted. Counsel thereupon read the entire statement, portions of which were not inconsistent with the testimony of the witness on the stand, and questioned him upon parts of it, to which the defendants excepted. In his argument to the jury, the plaintiffs' counsel was permitted to argue that the previous statement of Waite was true, and his testimony on the stand false, to which the defendants excepted.

During the argument for the plaintiffs, one of the defendants' counsel stepped to the bench and desired an exception noted to what had just been said. The attention of the presiding justice had been diverted from the argument, so that he had not no-

ticed the language complained of. On his request that the reporter's notes of the language be obtained, the defendants' counsel, after inquiry, reported that no minute of the language had been taken, and presented a writing as follows: " The Connecticut River Lumber Company desire an exception to that part of the argument referring to the education of George Van Dyke and the company about destroying dams, bridges, and property along the banks of the river." This exception was not called to the attention of the plaintiffs' counsel, and he had no knowledge of it until after the trial.

Subject to the defendants' exception to the substance of the matter called for, and not to the qualification of the witness, Cross, one of the selectmen of Monroe in 1888 and agent of the town during that year in the business of reconstructing the roads, gave his estimate of the additional expense of maintaining a new road built in place of one that had been destroyed, and what part of a certain expense incurred by the town was unnecessary. One Hadlock was permitted to testify, subject to exception, that the banks are steeper on each side of the new road than they were on the old road, as bearing on the question of additional expense of maintenance.

From the time the dam was repaired and rebuilt until it gave way, many citizens of Monroe, including some of the selectmen, had often been in plain sight of it. The company offered to show that after their purchase, in 1886, they received no notice from the selectmen or other officers of the town, or from any source, that the dam was unsafe. The evidence was excluded, and the company excepted.

An exception to the instructions to the jury is sufficiently stated in the opinion.

*James W. Remick, Bingham, Mitchell & Batchellor,* and *John M. Mitchell,* for the plaintiffs.

*Bingham & Bingham, Drew, Jordan & Buckley,* and *Smith & Sloane,* for the defendants.

BLODGETT, J. The demurrer was rightly overruled. It is useless at this day and in this jurisdiction to discuss the proposition that towns have not such an interest in the highways within their limits as to enable them to maintain an action upon the case for their destruction or obstruction; and the verdict, holding one of the defendants liable and acquitting the others, renders it equally useless to discuss the question of misjoinder.

The jury having been properly instructed that the previous statements of the witness Waite could be considered by them only as bearing upon his credibility, the defendants could not

have been prejudiced by the reading of such portions of the statements as were not inconsistent with his testimony on the stand; and so, under the universal rule of practice in such cases, no reason is furnished for disturbing the verdict. Nor is any reason for disturbing it furnished by the exception to the argument of plaintiffs' counsel to the jury, that the statements were true and the testimony false. Nobody can reasonably doubt the legitimacy of such an argument.

There is no finding in the case that the alleged improper argument of plaintiffs' counsel in reference to the education of the defendants "about destroying dams, bridges, and property along the banks of the river," was in fact made, nor is any exception allowed on this subject; consequently there is nothing which can now be considered.

The testimony of Cross and of Hadlock as to the additional expense in the cost of maintaining the new road over the old one, was competent. It was one of the elements of damage in the case. *Troy* v. *Cheshire R. R.*, 23 N. H. 83, 98.

Evidence against the defendants individually was properly admitted under the declaration, which alleges separate acts of negligence against each of them, by the combined and concurrent effect of which it is claimed the injury happened; nor did the introduction of such evidence against one of the defendants legally constitute an election by the plaintiffs to proceed against him alone for his individual wrong. The plaintiffs' case was made up of parts, and embraced many separate and several acts, each of which is alleged to have contributed to the injury; and it was the plaintiffs' right to have all of these acts weighed by the jury, who could place the responsibility of the defendants where they might deem it rightfully to belong.

The defendants' offer to show that after they bought the mill and the dam, in 1886, they never received any notice from the selectmen or other officers of Monroe, or from any source, that the dam was unsafe and insufficient, was properly excluded. No such notice was necessary. Whatever may have been the condition of the dam before its purchase by the defendants, they then became bound to keep it in a reasonably safe condition. As its owners and occupants, it was a duty cast upon the defendants by the law to so use and maintain the dam as not to unnecessarily endanger the safety or property of others; and if they neglected this duty, the law makes them liable for the consequences.

On the question whether the defendants in the driving and management of their logs exercised ordinary care, the jury were instructed, among other things, that they might properly consider what they would or would not have done had they been placed in the defendants' situation; and to this the defendants

excepted. In support of this exception it is contended that, as the subject of driving and managing logs in the river is one calling for expert knowledge and was so treated at the trial, the jury of non-experts could not properly consider what they would or would not have done under the circumstances. In other words, the contention of the defendants is that the ordinary layman cannot legally measure the degree of care to be exercised in a business requiring expert knowledge, by his own judgment as to what he would or would not have done in that business,— he having no knowledge or skill in regard to it; and that, in effect, the instruction to the jury was precisely the contrary. We do not so understand it.

But if the instruction, taken abstractly, may be justly subject to the criticism made upon it by the defendants, all grounds of criticism are removed when it is construed, as it fairly must be, in connection with the other instructions on the same subject, which were as follows: " There is no absolute test fixed by law by which the measure of care required in a particular case can be determined. The only standard is to be found in the carefully considered, dispassionate judgment of the jury in view of all the circumstances of the case. The question always is : What would a person of average prudence do under like circumstances ? If such a person, placed in exactly the same situation as the party whose conduct is in question, possessed of the same knowledge as he had of all the surrounding facts and circumstances, including the danger of resultant injury and the means of avoiding it, would or might have done as such person did, he is free from fault and not responsible for any accident or injury that may happen. . . . Did the Lumber Company, their officers, agents, and servants (because, being a corporation, they could act only by or through their officers, agents, and servants), exercise ordinary care in running their logs and permitting them to accumulate in the jam and elsewhere in the yard, or in failing to remove them prior to the washout? On this question you will consider the position of the logs, the number of them, the extent of the jam, and what effect, if any, the logs had, the means of preventing their accumulation, the stage of the water, the currents of the river,— in short, all the considerations urged upon you by counsel upon both sides, and all the evidence in the case. And on this question, as upon the like question in the case of Van Dyke and McFarland, you will be likely to, and properly may, consider what you would or would not have done had you been placed in their situation. If you find that they did exercise ordinary care,— that persons of average prudence placed in their situation, possessed of their knowledge and means of knowledge of the proper management and driving of logs, their effect upon the

dam, and of all the other circumstances, would or might have done as they did, both in permitting the logs to accumulate and in failing to remove them,— you will return a verdict for the Lumber Company. If you find that they did not exercise ordinary care in thus allowing the logs to accumulate, or in failing to remove them, and that they contributed to the washout, your verdict will be for the plaintiffs."

In the light of these instructions, construed as a whole in the same connected way in which they were given, it is more than morally certain that the jury were not misled by the particular instruction complained of; and if they were not, even though the instruction was erroneous, no ground is presented for reversing their judgment. But this is not all. Fairly construed, the instruction was not erroneous. It is not to be doubted that the jury might, upon all the evidence and arguments before them, properly consider what they would or would not have done had they been placed in the defendants' situation; and such only was the instruction.

The numerous other exceptions appearing in the case, but not insisted upon at the argument, need not be considered.

*Exceptions overruled.*

CARPENTER, J., did not sit: the others concurred.