## COMMONWEALTH *vs.* MICHAEL FITZGERALD.

Hampden.    September 25, 1895. — November 29, 1895.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Public Bridge — Property of County — Indictment — Variance.*

A county in which is located a bridge laid out as a public highway between two towns, the cost of the construction, maintenance, and repair of which is apportioned between the county and the towns, has a qualified or special property in a part of the bridge, which, under Pub. Sts. c. 214, § 14, is sufficient to sustain an indictment for burning the bridge, alleging it to be " the property of the county."

INDICTMENT for burning, on September 3, 1894, at Springfield, "a certain bridge, to wit, the old toll bridge, so called, extending from West Springfield to Springfield, in said county of Hampden, over the Connecticut River, the property of the county of Hampden." At the trial in the Superior Court, before *Braley*, J., the jury returned a verdict of guilty; and the defendant alleged exceptions, which appear in the opinion.

*T. Fitzgibbon*, for the defendant.

*C. L. Gardner*, District Attorney, for the Commonwealth.

MORTON, J. The bridge in question was originally a toll bridge. By St. 1872, c. 131, § 1, it was laid out as a public highway, and the care and superintendence of it were given by § 4 to the city council of Springfield and the selectmen of West Springfield. Commissioners were appointed who awarded the proprietors thirty thousand dollars "as damages for the laying out of said bridge, piers and abutments, and way as a public highway, and for the land, toll-house, and all the appurtenances." Of this sum, fifteen thousand dollars was apportioned to the county of Hampden, and was duly paid by it. Ten thousand dollars was allotted to the city of Springfield, four thousand dollars to the town of West Springfield, and one thousand dollars to the town of Agawam. The commissioners also awarded that the county should pay one half of the expense of maintenance and repairs, which it has done, and that the city of Springfield should pay one third, and the town of West Springfield one sixth.

The indictment alleged that the bridge was the property of the county of Hampden. The defendant asked the court to rule that there was a variance between the allegation and the proof, and also to instruct the jury that there was no evidence that the county had any general or special property in the bridge. The court refused to rule or instruct as requested, and the case went to the jury with instructions that for the purposes of the case they might consider the bridge as the property of the county.

If under Pub. Sts. c. 214, § 14, the county had any property general or special in the whole or any part of the bridge, then the instruction was correct, and there was no variance.

In the case of highways or town ways laid out in the ordinary

manner, all that is acquired, so far as the soil is concerned, is an easement in the land on which they are located and constructed; and that belongs to the public, and not to the counties or cities or towns which are required to pay the damages caused by laying them out, and the expenses of making and maintaining them. The fee remains in the owner of the soil. *Andover* v. *Sutton*, 12 Met. 182. *Cheshire* v. *Adams & Cheshire Reservoir*, 119 Mass. 356. *Charlotte* v. *Pembroke Iron Works*, 82 Maine, 391. The ways thus created are for the general benefit of the public, and not for the special use of any particular county, city, or town, though it may happen that those living in the vicinity will derive more benefit from them than those living elsewhere, and that local needs may have been the immediate cause of the laying out.

Public bridges form parts of the highways or town ways in which they are constructed, and, except when other provision is made therefor, are to be built and maintained and kept in repair by the county or city or town where they are situated. Pub. Sts. c. 52, §. 1.

Originally, it was provided that they should be constructed by the towns in which they were situated (3 Mass. Col. Rec. 144, 145); but afterwards, as the burden thus imposed on the towns was deemed too great, the counties in which they were located were obliged to build them (Ibid. 376); now, the authority to build them grows, generally speaking, out of, and is included in, the authority to lay out and make highways and town ways, and the obligation to maintain and repair them arises out of a like obligation. 3 Dane, Abr. 278.

There have been numerous instances, however, of which we cite a few, and of which this case furnishes an example, in which either the Commonwealth has borne the whole or a part of the expense of construction, in which latter case the residue and the expense of maintenance and repair have been divided between one or more counties and the benefited cities or towns, or the whole cost of construction and of maintenance and repair has been apportioned between the county and certain cities and towns, or has been placed upon certain towns, or has been provided for in some other especial manner. Prov. St. 1693–94, c. 22, 1699–1700, cc. 11, 27; 1 Prov. Laws, (State ed.) 158,

383, 419. Prov. St. 1716–17, c. 5, 1736–37, c. 5; 2 Prov. Laws. (State ed.) 44, 795. Prov. St. 1746–47, c. 22; 3 Prov. Laws, (State ed.) 326. Prov. St. 1764–65, c. 23, 1768, c. 12; 4 Prov. Laws, (State ed.) 740, 1023. Prov. St. 1770–71, c. 31; 5 Prov. Laws (State ed.) 133. St. 1860, c. 95. St. 1862, c. 177. St. 1868, c. 309. St. 1869, c. 161. St. 1871, c. 177. St. 1872, c. 295. St. 1873, c. 200. St. 1875, c. 175.

In all of these cases, unless there is some special provision to the contrary, the easement or right of way belongs to the public, and not to the counties or cities or towns which have been obliged to contribute to the cost of furnishing, constructing, and maintaining the bridges, and they cannot maintain an action for any injury or obstruction to the right of way as such, for the reason that they have no right of property in it.

But the easement is one thing, and the structure and materials composing a bridge or way are another thing. Those are analogous to erections on the land of another, under a right secured for that purpose by the party erecting them; as long as the ways exist they form a part of them and are subject to use by the public. But when the ways are discontinued or abandoned, the structures and materials entering into and forming a part of them revert, not to the public or to the landowner, but to the counties, cities, and towns that furnished them and paid for them, and which therefore, while they continued to be used by the public, have a qualified or special property in them. *Troy* v. *Cheshire Railroad*, 23 N. H. 83. *Bidelman* v. *State*, 110 N. Y. 232. *Shirk* v. *County Commissioners*, 106 Ind. 573. *Greeley Township* v. *County Commissioners*, 26 Kans. 510. *Harrison* v. *Parker*, 6 East, 154. *Wellington* v. *Wilson*, 16 U. C. (C. P.) 124. Elliott, Roads & Streets, 36. *Corwin* v. *Cowan*, 12 Ohio St. 629. *Wagner* v. *Cleveland & Toledo Railroad*, 22 Ohio St. 563. See *Freedom* v. *Weed*, 40 Maine, 383.

The bridge in this case was laid out as a highway, which, strictly speaking, would constitute it a county way; *Denham* v. *County Commissioners*, 108 Mass. 202; and to some extent, no doubt, the county commissioners had authority over it. St. 1888, c. 313. But whether or not it was wholly the property of the county we need not consider, since, under the principles above stated, it is clear that the county had a qualified or

special property in a part of it, and that was enough to sustain the indictment.

The result is, therefore, that the rulings of the Superior Court were correct, and that the exceptions must be overruled, and it is so ordered.                                            *Exceptions overruled.*