## TOWN OF BEDFORD v. UNITED STATES.

Circuit Court of Appeals, First Circuit.
December 27, 1927.

No. 2137.

**1. Eminent domain** �824–47(1)—**Rule that town has no right to compensation, where commonwealth takes for one public use property previously devoted by town to other public use, is not applicable, where United States condemns under own authority (40 USCA §§ 257, 258).**

In case of condemnation by the United States under Act Aug. 1, 1888 (40 USCA §§ 257, 258; Comp. St. §§ 6909, 6910), the rule that a town has no right to compensation, where the commonwealth takes for one public use property previously devoted by the town to another public use, is not applicable; the taking being by virtue of the authority of the United States, and not under authority delegated to the United States by the commonwealth.

**2. Eminent domain** �824–85—**Town has qualified property in its highways, for which just compensation must be made, on condemnation by United States (Const. Amend. 5).**

A town, as representative of its taxpayers, has a qualified property or interest in its highways, within Const. Amend. 5, inhibiting the taking of private property for public use without just compensation.

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Jr., Judge.

Condemnation proceeding by the United States, in which the Town of Bedford was denied compensation, and it brings error. Decree of condemnation amended.

Elihu G. Loomis, of Boston, Mass., for plaintiff in error.

Telesphore Leboeuf, Sp. Asst. U. S. Atty., of Webster, Mass. (Frederick H. Tarr, U. S. Atty., of Gloucester, Mass., on the brief), for the United States.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. Proceeding under Stat. 1888, c. 728 (25 Stat. p. 357 [40 USCA §§ 257, 258; Comp. St. §§ 6909, 6910]), the United States took, as of November 10, 1926, by eminent domain, for a Veterans' Hospital, a tract of land in the town of Bedford containing about 400 acres. The taking covered "all rights of every name, nature, and description in and to that portion of Springs road so called, as shown" on a plan referred to. Springs road was an old road, used from time immemorial, and maintained at the expense of the town. The taking cuts out about a half mile of the road, but the severance will render other portions unavailable and require new roads to connect the termini. The facts concerning the extent of the damage need not now be stated; for it is stipulated that, if the town is entitled to recover, the amount shall be $10,000.

The court below ruled against the town, without opinion. The single question here is whether the taking by the United States, by eminent domain, of a way located in the town, entitles the town to compensation.

[1] The United States attorney undertakes to support this ruling by urging that "the United States is not liable unless the commonwealth would have been liable if it had taken it for its own use." Otherwise stated, the sole reliance of the government is on the Massachusetts rule that a taking by the commonwealth for one public use grounds no right to compensation in a town which has previously devoted the land taken to another public use. But the rule is not applicable.

In Town of Nahant v. United States, 136 F. 273, 275, 69 L. R. A. 723, this court expressly held that under this statute of 1888, supra, the proceeding for condemnation is not so far authorized by the commonwealth as to entitle the United States to stand upon the Massachusetts law as to the rule of damages, where the property taken for a second and different public use is connected with a prior public use authorized by the state. The same case affirming the same doctrine was again before this court in United States v. Town of Nahant, 153 F. 520.

This taking in Bedford was by virtue of the authority of the United States, and not under authority delegated to the United States by the commonwealth of Massachusetts. See Chappell v. United States, 160 U. S. 499, 510, 16 S. Ct. 397, 40 L. Ed. 510; United States v. Gettysburg Electric R. Co., 160 U. S. 668, 679, 16 S. Ct. 427, 40 L. Ed. 576; Kohl v. United States, 91 U. S. 367, 371, 23 L. Ed. 449.

[2] The present question, then, is not whether the town could have recovered, if the taking had been by the commonwealth for another public use, but whether, when the federal government, as an act of paramount sovereignty, has taken this land and the rights of the town in this highway, the town is entitled to be made good for an actual loss of $10,000 thus caused.

The rulings relied upon concerning takings where the authority is delegated by the commonwealth are not in point. In re Certain Land in Lawrence (D. C.) 119 F. 453, 454; Burt v. Merchants' Ins. Co., 106 Mass. 356, 8 Am. Rep. 339, dealing with land for the

Boston post office. Statutes cited in Gen. Laws Mass. vol. 1, p. 5.

While it is settled that in Massachusetts, ordinarily, towns do not own the fee in town ways (Inhabitants of Millbury v. Blackstone Canal Co., 8 Pick. 473), and that the easement is not technically vested in the town, but belongs to the general public (Inhabitants of Andover v. Sutton, 12 Metc. 182, 188), it is also settled that the town has a qualified property or interest in its highways (McHugh v. City of Boston, 173 Mass. 408, 53 N. E. 905). Towns may recover for the obstruction or destruction of town ways. See Town of Troy v. Cheshire R. Co., 23 N. H. 83, 55 Am. Dec. 177, in which is a learned and instructive opinion by Judge Bell as to the rights and obligations of towns concerning highways. Cf. Gilman v. Town of Laconia, 55 N. H. 130, 131, 20 Am. Rep. 175; Town of Monroe v. Connecticut River Lumber Co., 68 N. H. 89, 92, 39 A. 1019. Towns are permitted to recover for damages done town ways, for the simple reason that thus additional burdens are imposed upon the taxpayers required by law to maintain such ways. Cf. Gen. Laws Mass. c. 84, §§ 1, 15, 22. Towns cannot discontinue highways without becoming liable for damages to landowners injured thereby. Gen. Laws, c. 79, § 9 et seq.

For present purposes, a town may be regarded as a group of taxpayers, charged, inter alia, with the burden of building and maintaining such highways as common convenience and necessity require. Any act that increases those burdens takes additional money from that group of taxpayers. A highway once built exonerates, pro tanto, that group; taken or otherwise destroyed, a new burden is imposed. To take the furnished means of meeting a liability imposed by law has the same effect as taking property technically vested; loss accrues. Bedford's right in Springs road was as real a property right as a leasehold of the same land, or as an abutting owner's right of access to the street. Rigney v. City of Chicago, 102 Ill. 64; Hart v. Buckner (C. C. A.) 54 F. 925, 930; Old Colony & F. R. R. Co. v. Inhabitants of Plymouth County, 14 Gray (Mass.) 155.

Doubtless cases may be found in which recovery has been refused because of an erroneous conception of the real meaning of the word "property" as used in the Constitution and in eminent domain cases. 2 Lewis on Eminent Domain (3d Ed.) §§ 62–69; 3 Dillon's Munic. Corporations (5th Ed.) §§ 1015–1018. Perhaps the best discussions of this point are found in Eaton v. Boston, C.

& M. R. R., 51 N. H. 504, 12 Am. Rep. 147, and Thompson v. Androscoggin River Imp. Co., 54 N. H. 545.

In the Eaton Case, Judge Jeremiah Smith pointed out (page 511) that the constitutional prohibition against taking private property without compensation has received in some quarters a construction which renders it of comparatively little worth, because grounded on a misconception of the meaning of the word property. He observes that in strict legal sense even land is not property, but merely the subject of property. The learned judge then discusses, with great acuteness and copious citation of authorities, the real meaning of the word "property."

In the Thompson Case is an illuminating discussion by Judge Doe of the same general problem. See page 551 et seq., in which he points out that "property in land must be considered, for many purposes, not as an absolute, unrestricted dominion, but as an aggregation of qualified privileges, the limits of which are prescribed by the equality of rights, and the correlation of rights and obligations necessary for the highest enjoyment of land by the entire community of proprietors." Among other illustrations, he notes that a refusal to pay a debt is an injury to the property of the creditor (25 N. H. 540); that "a patent right, a copyright, a right of action, an easement, an incorporeal hereditament, may be property as valuable as a granite quarry." Property is taken when any one of these proprietary rights is taken or destroyed. Arimond v. Green Bay & M. Canal Co., 31 Wis. 316, 335. Applying the reasoning of these cases to the problem before us, it is clear that the town of Bedford had a property right in this town way. The road was, as already noted, a furnished means for the performance of a legal duty. While the town had not the right of exclusive user, it did have a right to exclude all not using the highway in a manner consistent with the equal rights of other users, who in turn had rights that the town was bound to maintain.

But it is not—and under the stipulation herein cannot—be contended that Bedford has not suffered a damage of $10,000 by the government's taking of this way. The case, therefore, falls plainly under the protection of the Fifth Amendment. The doctrine laid down in Monongahela Nav. Co. v. United States, 148 U. S. 312, 325, 326, 13 S. Ct. 622, 37 L. Ed. 463, is fully applicable. In that case, dealing with the attempt of Congress to take the franchise of the Monongahela Company without compensation, the court, by Mr.

Justice Brewer, held the attempt must fail, because under the Fifth Amendment no private property could be taken for public use without just compensation (page 325 [13 S. Ct. 626]): "There can * * * be no doubt that the compensation must be a full and perfect equivalent for the property taken."

In United States v. Gettysburg Electric R. Co., 160 U. S. 668, 685, 16 S. Ct. 427, 431 (40 L. Ed. 576), the court held that the United States had power to take by eminent domain the Gettysburg battlefield, including the location of a railway, saying: "The power of Congress to take land devoted to one public use, for another and a different public use, upon making just compensation, cannot be disputed." Manifestly, the "just compensation" must go to or for the benefit of the persons damaged by the taking—in this case the taxpayers of Bedford. See, also, St. Louis v. Western U. Teleg. Co., 148 U. S. 92, 13 S. Ct. 485, 37 L. Ed. 380. Atlantic & P. Teleg. Co. v. Philadelphia, 190 U. S. 160, 23 S. Ct. 817, 47 L. Ed. 995. We can find not even a dictum in the decisions of the Supreme Court to support any other doctrine.

Parenthetically, question might be made of the power of the federal officials acting in this taking to take such a public facility as this town way without express authority from either Congress or the commonwealth of Massachusetts. See the observations of Judge Putnam in the New Castle Case (C. C.) 165 F. 783, 788, a taking under the same statute. Judge Putnam there observes: "Whatever may be the sovereign rights of the state of New Hampshire in the public ways in the town of New Castle, the United States have none; but they come in as a stranger, and must accept the position of one setting up an absolutely adverse interest. * * * There is also a serious question whether property already lawfully taken and held for the uses of the state as a public way can be taken for the uses of the United States without express authority therefor. * * * It would be unreasonable to assume that Congress intended that federal officials should assert jurisdiction to interfere with the public purposes of sovereign states without express authority therefor. The presumption is that authorized public uses are not to be interfered with under mere general terms of federal or state legislation."

See, to the same general effect, Old Colony R. Co. v. Framingham Water Co., 153 Mass. 561, 563, 27 N. E. 662, 13 L. R. A. 332; Easthampton v. County Com'rs, 154 Mass. 424, 425, 28 N. E. 298, 13 L. R. A. 157; Boston v. Inhabitants of Brookline, 156 Mass. 172, 175, 30 N. E. 611; Folsom v. County Com'rs of Middlesex, 173 Mass. 48, 53 N. E. 155. 3 Dillon's Munic. Corporations (5th Ed.) § 1022.

However, no question as to the validity of this taking is now submitted, and we intimate no opinion upon it. But the contention that the United States may, under a grant in general terms of power of eminent domain, and without any cession or grant of authority from the state, take or destroy public facilities existing under the law of the state, is a very far-reaching proposition, particularly when coupled with the present contention of immunity from obligation to pay any compensation for such public utilities. Could the United States, under the same statute, take or destroy without compensation, the metropolitan waterworks?

Town of Nahant v. United States (C. C. A.) 136 F. 273, 69 L. R. A. 723, grew out of a condemnation by the United States of land for fortifications and coast defenses. The exact question now presented was not considered by the court, apparently because counsel for Nahant did not urge it. The court said by Judge Aldrich:

"The town of Nahant, under general laws of the state, exercised the municipal right to build streets for the accommodation of public travel, and to construct water and sewer systems for the comfort and protection of the local public. So far as lands within ways dedicated to public use and travel are concerned, it is not seriously contended in argument that the municipality had any title thereto which it can set up for purposes of compensation. Therefore we need not deal with any possible question in that respect. It is contended, however, that property in structures, such as pipes and other material connected with sewer and water systems, and in artificial structures in connection with streets, may become the subject of municipal property, and thus stands differently."

The contentions of the town were sustained, with a careful review of the authorities; the court holding that the structures in the streets were "at least for purposes of constitutional just compensation * * * private municipal property." "There is no just reason, under such circumstances, for saying that because of the ordinarily accepted legal fiction that structural property attaches to the legal title to the realty, and because the municipality holds the legal right to use the land, rather than the legal title to the land, the

municipal trustee of the body politic which paid for the structural property should not have just compensation from a distinct and independent entity which takes it, not as owner of the land, but under arbitrary right, and for a purpose entirely different than that for which the property was originally designed and paid for, and to which it was originally dedicated. As between parties like these, where the entity taking the property is in a legal sense a stranger to the municipal right, it is difficult to see any difference in principle between municipal property consisting of flagstones, granite curbings, and lamp posts, or other things which would be necessary and valuable for use in connection with the street system of a municipality, and municipal property consisting of waterworks, elaborate sewer pipes, or electric lighting systems, furnishing water or light upon money rates to individual users, or free to the inhabitants of the municipality, except the burden which results from taxation."

These views were reaffirmed by this court in the same case (153 F. 520), where Judge Aldrich said:

" 'Just compensation' is the compensation vouchsafed to private interests by the Federal Constitution. This phase of the case is not upon arbitrary lines. The government in a situation like this in effect says the right to take is necessarily arbitrary and must stand unchallenged; but having thus, under the strong arm of sovereignty, cut through private and municipal rights, the rigor of the arm shall be relaxed, and the government itself will see that just compensation is awarded accordingly. The paramount law intends that the owner shall be put in as good condition pecuniarily by a just compensation as he would have been if the property had not been taken. Lewis on Eminent Domain, § 464. In our view it is almost, if not quite, an element of the government's case to see to it that just compensation is ascertained and accorded. The question of just compensation. contemplated by the Constitution is more an equitable question than a strictly legal or technical one. The policy of the government is to absorb all interests, so that it shall remain undisturbed in the exercise of its dominion over the property, and to this end its purpose is to render constitutional compensation under legal principles, softened somewhat by broad considerations of justice."

Careful consideration of these two opinions makes it clear that many of the difficulties, logical and under the authorities, that the court there met, grew out of the failure of the town of Nahant to claim full compensation—not merely for its structures in the streets, but for its right in the land constituting the streets. The logic of these two decisions covers all rights and interests that towns have in highways, and, as already noted, the right to exoneration from the burden of constructing and maintaining a substitute way is a valuable property right belonging to the group of taxpayers called a town.

It should not be overlooked that, when our highway law took form, "ways" were hardly more than strips of land, slightly, if at all, improved. To-day, as a result of the automobile, a large part of our highways are structures of stone and cement, costing more per mile than the original cost of many of our railroads. We can see neither logic nor justice in attempting to distinguish between such structures in the street as sewers, water pipes, and buttresses of bridges, and the structure constituting the way itself, and the right of the town to the use of the land, apart from any expenditure previously made thereon, by the town. The real question is one of the incidence of cost or expenditure; and there is no such thing as compensation, within the fair meaning of the word, unless the separate entity that under sovereign power appropriates a part of this town way is required to pay the expenses it thus imposes upon the town within whose territory it makes the taking.

The relation of the United States to this highway is quite different from that of the commonwealth of Massachusetts. Cf. Proprietors of Mt. Hope Cemetery v. City of Boston, 158 Mass. 509, 33 N. E. 695, 35 Am. St. Rep. 515, a learned and elaborate opinion dealing with the distinction between property held by a municipality in its private or proprietary character, and property or rights held "for purposes deemed strictly public," in which the town "holds merely as an agency of the state government for the performance of the strictly public duties devolved upon it." It is settled law that the commonwealth may reallocate, without compensation, to other public uses, property or rights thus held as a mere agency of the state government, but may not so deal with many other kinds of property owned "in its private or proprietary character, as a private corporation might own it." 158 Mass. 519, 33 N. E. 698. The unlimited power of the state over the first kind of property rests upon the broad proposition that cities and towns are, for most practical purposes, mere creatures of the state. Their boundaries may be changed; their powers en-

larged or limited; the state may delegate to them more or less of control over taxation, police protection, schools, and other functions—social, business, or political. It may regard lands appropriated for town ways as of more public utility if used for a water system. Inhabitants of Cheshire v. Adams & C. Reservoir Co., 119 Mass. 356. Any increased tax burden resulting from such shifting of the public use of lands lying in any town is within the scope of the Legislature's general control over the allocation of tax burdens. 119 Mass. 360. But the federal government's power of eminent domain—necessarily implied as an efficient and appropriate means of exercising other powers expressly given—is to be used subject to the broad limitations of the Fifth Amendment. It is a stranger to the town. It can no more take, without compensation, their property rights, than it can those of an individual.

The result is that, pursuant to the stipulation, the decree of condemnation is to be amended by awarding $10,000 to the town of Bedford, with interest thereon from November 10, 1926.

The decree of condemnation is amended by awarding $10,000 to the town of Bedford, with interest thereon from November 10, 1926.