### UNITED STATES v. STATE OF ARKANSAS et al.

#### No. 13493.

Circuit Court of Appeals, Eighth Circuit.

Dec. 26, 1947.

S. Billingsley Hill, Atty., Dept. of Justice, of Washington, D. C. (A. Devitt Vanech, Asst. Atty. Gen., R. S. Wilson, of Fort Smith, Ark., U. S. Atty., John E. Harris, Sp. Asst. to the Atty. Gen., and Roger P. Marquis, Atty., Dept. of Justice, of Washington, D. C., on the brief), for appellant.

Neill Bohlinger, Gen. Counsel, Arkansas State Highway Commission, of Little Rock, Ark (Guy A. Williams, Atty. Gen., of the State of Arkansas, and Cleveland Holland, Asst. Atty. Gen., of the State of Arkansas, on the brief), for appellees.

Before GARDNER, THOMAS and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal by the United States from a judgment fixing the amount of "just compensation" in a condemnation proceeding. The jurisdiction of the court arises under the General Condemnation Act of August 1, 1888, 40 U.S.C.A. § 257. Authority to acquire the lands involved is granted in the Flood Control Acts of June 22, 1936, c. 688, 49 Stat. 1570, and June 28, 1938, c. 795, 52 Stat. 1215, 1218, 33 U.S.C.A. § 701a et seq.

The government project contemplated the construction of a flood-control and hydro-electric dam in the Norfolk river in Arkansas. This proceeding was commenced May 29, 1943, to acquire portions of U. S. Highway No. 62 and Arkansas State Highway No. 101, both of which were a part of the Arkansas State Highway System. One of these highways ran in a general north-south direction and the other in a general east-west direction. They converged near the town of Henderson at which point they crossed the Norfolk river over a concrete bridge. The en-

gineers in charge of the work and the state highway officials recognized that when the reservoir above the dam was filled sections of both highways and the bridge at Henderson would be submerged. Although the dam had not been completed, the gates were closed on June 17, 1943, and the sections of the highways involved in this proceeding and the Henderson bridge were submerged on September 15, 1943, and could not thereafter be used by the public.

At the commencement of the proceeding the government filed its Declaration of Taking and deposited in the registry of the court as estimated compensation of the state for the highways which would be inundated the sum of $1,422,000. This sum was arrived at on the theory that permanent substitute highways could be built at a cost of $1,342,000 by using the dam as a bridge instead of constructing a new bridge, and that a ferry could be constructed for $80,000, and operated and maintained as a temporary expedient while the dam was under construction. The dam was completed so that it could be used as a bridge on November 4, 1944, about 14 months after the roads had been flooded. In the meantime the state had constructed and operated a free ferry at a cost of more than $80,000.

The case was submitted upon a stipulation of facts. The parties stipulated that $1,342,000 represented the cost of constructing new substitute highways by using the dam as a bridge over the river, and that judgment should be entered for that amount. The parties could not agree upon the right of the state to compensation for the construction and operation of the ferry as a temporary substitute highway during the period of 14 months between the flooding of the old bridge and the highways on September 15, 1943, and the completion of the dam on November 4, 1944. The only question in the case is whether the cost of constructing and operating the ferry is a proper element of just compensation to the state for which the government is liable.

The government contends that the payment of the cost of the permanent substitute highway, $1,342,000, fully discharged its obligation and that the cost of the temporary ferry is not compensable.

We think the government's view of the case does not take into account the fact that the bridge was a part of the substitute highway, the cost of which was not included in the sum paid. The government undertook to furnish and construct the bridge by agreeing that the dam should be so used. This fact must be considered, also, in connection with the continuing obligation of the state to furnish and maintain its highways for the use of the public. The temporary ferry was made necessary by the fact that the government elected to close the gates of the dam and to inundate the old bridge before the dam was completed so that it could be used as a substitute bridge.

■ The proper measure of damages for the taking of public highways and streets in condemnation proceedings is well settled. The fundamental principle is that the public authority charged with furnishing and maintaining the public way, whether it be a highway, a street, or a bridge, must be awarded the "actual money loss which will be occasioned by the condemnation * * *" This amount is usually the cost of furnishing and constructing substitute roads. United States v. Des Moines County, 8 Cir., 148 F.2d 448, 449, 160 A.L.R. 953, certiorari denied, 326 U.S. 743, 66 S.Ct. 56, 90 L.Ed. 444; United States v. Wheeler Township, 8 Cir., 66 F.2d 977, 984, 985; Jefferson County, Tenn., v. Tennessee Valley Authority, 6 Cir., 146 F.2d 564, 566, certiorari denied, 324 U.S. 871, 65 S.Ct. 1016, 89 L.Ed. 1425; Mayor and City Council of Baltimore v. United States, 4 Cir., 147 F.2d 786, 790; Town of Bedford v. United States, 1 Cir., 23 F.2d 453, 56 A.L.R. 360; Brown v. United States, 263 U.S. 78, 83, 84, 44 S.Ct. 92, 68 L.Ed. 171.

■ The government argues that the cost of the temporary ferry is similar to the expenses of removal and relocation of private buildings from lands taken in condemnation proceedings because such costs are not a part of the value of the thing taken, citing United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.

Ed. 729. The present case is distinguishable from such cases in that the temporary ferry was a necessary step in furnishing a substitute bridge for the use of the public while the dam was under construction. See Brown v. United States, supra. The cost of the temporary ferry was justly a part of the cost of a substitute highway; it was a part of the actual money loss occasioned by the condemnation.

Judgment affirmed.