**UNITED STATES of America,**
**Appellant,**

**v.**

**The BOARD OF EDUCATION OF THE COUNTY OF MINERAL, Appellee.**

**In the Matter of UNITED STATES of America, Plaintiff,**

**v.**

**3.99 ACRES OF LAND, MORE OR LESS, situate in MINERAL COUNTY, WEST VIRGINIA, The Board of Education of the County of Mineral, etc., Defendants.**

**No. 7548.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 6, 1958.

Decided Feb. 27, 1958.

Harold S. Harrison, Atty., Dept. of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., Albert M. Morgan, U. S. Atty., Robert J. Schleuss, Asst. U. S. Atty., Fairmont, W. Va., and Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellant.

Clarence E. Martin, Jr., Martinsburg, W. Va., and Donald C. Hott, Keyser, W. Va., for appellee.

Thomas B. Finan, City Sol., Cumberland, Md., for the Mayor and City Council of Cumberland, a municipal corporation, as amicus curiae.

Before PARKER, Chief Judge, and SOBELOFF and HAYNSWORTH, Circuit Judges.

PARKER, Chief Judge.

This is an appeal by the United States from a judgment on a jury verdict awarding damages to the Board of Education of Mineral County, West Virginia, for the taking of a portion of the property of the Ridgely, West Virginia, high school in connection with a flood control project on the Potomac River. In the condemnation proceeding the United States acquired fee simple title to 3.42 acres of the high school property and a temporary easement over 0.57 of an acre. The high school property prior to the taking embraced approximately eight acres and the evidence was that the high school could not be properly operated with less acreage than that. There was evidence to the effect that the high school property was worth approximately $400,000, that it would not be feasible to move the high school and that the value of adjacent property to take the place of the lands condemned was approximately $200,000. The case was submitted to the jury with instructions that its award embrace the value of the property taken plus damages to the residue less any benefits which might accrue to the residue as the result of the construction of the project, with the further instruction that, if the jury should find that the property taken had no market value, it might consider the cost of acquiring adjacent property in substitution for the property taken. The jury returned a verdict for $97,500 and from judgment in accordance therewith the government brings this appeal.

The complaint of the government is that the Board was allowed to introduce evidence of the value of the adjacent property which it would have to acquire if the acreage taken by the government was to be replaced and that the jury was allowed to consider this in arriving at a verdict, the contention of the government being that only market value could be considered in awarding damages. The portion of the charge to which exception was taken is as follows:

"We now turn to the formula which the courts have devised if you should find, from a preponderance of the evidence, that the property taken had no market value at the time of taking.

"The courts have said that where a portion of a tract of land is taken, and the land so taken has no market value at the time of taking, replacement cost or substitution cost is appropriate for consideration in reaching a judgment concerning the value which is just compensation. Under this formula, it appears that the defendant would be entitled to have the lands taken substituted, by replacement with lands with the same proximity if reasonably possible, and if the Board of Education is required to continue to provide the same facilities for its education, athletic and recreational program being con-

ducted at the time of taking by the government. The cost in money of providing such replacement and such substitution facilities or land would then be just compensation to the Board of Education. Under this formula, one of the most important questions for you to decide is whether or not the Board of Education is so required to continue in effect the same educational, athletic and recreational program which was conducted on these high school lands of the Board of Education at the time of the taking by the government. You may reach the conclusion that it is not necessary for the Board of Education to so continue, and if you should so conclude, you should consider whatever is necessary, as shown by a preponderance of the evidence to be necessary, in order to determine what is the proper equivalent or substitute for the lands taken herein; in other words, how much loss will be suffered by the Board of Education by reason of the taking of a portion of its property.

"In applying the rule of ascertaining just compensation on the basis of cost of replacement or substitution, if you should find, from a preponderance of the evidence, that such is necessary, again you could take into consideration any peculiar or special benefits, which are shown by a preponderance of the evidence, that have been or will be derived by the Board of Education to its remaining building and lands from the construction of the flood wall, if such benefits are capable of reasonable present estimate and computation.

"It would be incumbent upon the Board of Education to put to the very highest, best and fullest utilitarian use all lands which it has remaining surrounding the school building, if it finds that it is either necessary or desirable to continue in every detail the athletic, recreational and physical education program conducted before the taking of the lands by the government. If the Board of Education is not obligated or required to conduct such a program but only deems it advisable to do so, it would be incumbent upon it to use the remaining existing facilities to their fullest extent, even though the rescheduling of curricular activities might result in inconvenience but not in pecuniary loss.

"You have a right to consider the uses to which the Board of Education was putting all of its lands at the time of the taking on the 30th day of April, 1956, and the uses which may have been wholly or partially destroyed as a result of the taking, and to fix and determine, from a preponderance of the evidence, a just compensation for the damages suffered by the defendant in restoring itself to the full utilitarian and equivalent use it enjoyed before the taking by the government. There is testimony before you as to other lands and properties, improved and unimproved, in close proximity to the remaining lands of the Board of Education, some to the south and some to the north of the high school building. The appraised value of these adjoining properties is stated by the witnesses for the Board of Education to be in the neighborhood of $200,000. You may ask yourselves whether or not a reasonably prudent and careful man, or group of men, would consider acquiring sixteen parcels of land, improved and unimproved, which are valued at approximately $200,000, as a substitute for the 3.422 acres of land taken by the government. The government is required to pay just compensation for the lands taken, but no more than necessary to indemnify the Board of Education for its loss."

We see nothing in this portion of the charge or in the evidence upon which it

is based of which the government can justly complain. Any error in making the application of the rule there stated dependent upon a finding that the land taken had no market value was error favorable to the government. Under the circumstances shown by the evidence, it was clearly proper for the jury to take into consideration the cost of acquiring property to take the place of property acquired by the government, even if that property did have market value, since severance damage to the residue could not reasonably be measured in terms of market value. Ordinarily, of course, market value is the measure of compensation in condemnation cases; and the difference in market value of the residue before and after taking is ordinarily a fair measure of severance damages. As said in United States v. Cors, 337 U.S. 325, 332, 69 S.Ct. 1086, 1090, 93 L.Ed. 1392, however, we are not to make a fetish of market value "since it may not be the best measure of value in some cases." Where the highest and best use of the property is for municipal or governmental purposes, as to which no market value properly exists, some other method of arriving at just compensation must be adopted, and the cost of providing property in substitution for the property taken may reasonably be the basis of the award.

In this case, it appears that the regulations of the State Board of Education of West Virginia specified 10 acres of land for use by a high school of this character; and there was abundant evidence that the physical education program of the school could not be carried on satisfactorily with less than the eight acres which belonged to it prior to the government's taking. The highest and best use for its property was for school purposes; but for these purposes there was ample testimony that it had no market value. Its value for school purposes, otherwise estimated, was approximately $400,000 and this value would be largely destroyed, according to the evidence, if land were not acquired in substitution for the land taken by the government. Under such circumstances, it would be absurd to hold that the Board's recovery should be limited to the value as vacant lots of the property taken and that no severance damages should be allowed for damages to the residue merely because the residue had no market value for school purposes and its market value for other purposes was not affected. Any reasonable man would say that where the government takes a part of the property necessary to the proper operation of a school, the government should make it possible for the school to acquire other property to use in substitution for the property taken.

In Brown v. United States, 263 U.S. 78, 82, 83, 44 S.Ct. 92, 94, 68 L.Ed. 171, where the holding was that the United States had constitutional power to condemn lands to be used in substitution for lands taken for reservoir purposes, the Supreme Court, speaking through Chief Justice Taft, said:

"The usual and ordinary method of condemnation of the lots in the old town, and of the streets and alleys as town property, would be ill adapted to the exigency. It would be hard to fix a proper value of homes in a town thus to be destroyed, without prospect of their owners' finding homes similarly situate on streets in another part of the same town, or in another town near at hand. It would be difficult to place a proper estimate of the value of the streets and alleys to be destroyed and not to be restored in kind. A town is a business center. It is a unit. If three-quarters of it is to be destroyed by appropriating it to an exclusive use like a reservoir, all property owners, both those ousted and those in the remaining quarter, as well as the state, whose subordinate agency of government is the municipality, are injured. *A method of compensation by substitution would seem to be the best means of making the parties whole.*" (Italics supplied).

In Town of Clarksville v. United States, 4 Cir., 198 F.2d 238, 242, this Court dealt with condemnation of a part of a town's sewer system and held that the taking might be compensated by paying the cost of a substitute. In dealing with this matter, Judge Dobie, speaking for the Court, said:

"The general principles applicable to an eminent domain taking of municipal facilities are well established. The taking may be justly compensated by payment of the cost of a substitute, so long as a full equivalent is afforded for the property taken. See Brown v. United States, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171; United States v. State of Arkansas, 8 Cir., 164 F.2d 943; Mayor and City Council of Baltimore v. United States, 4 Cir., 147 F. 2d 786 [787], 790; United States v. Wheeler Township, 8 Cir., 66 F.2d 977; Town of Bedford v. United States, 1 Cir., 23 F.2d 453, 56 A.L.R. 360. Of course, the interests of the public, upon which the payment burden rests, are at stake, too, and the award must not be in excess of strict equivalence. Yet we are not here dealing with a rigid, blind measure, that grants compensation only on a pound of flesh basis, but rather with an equitable concept of justice and fairness that accords with the Fifth Amendment's mandate. Accordingly, the equivalence requirement which must be met with respect to the substitute facility is more that of utility than of mere dollar and cents value. Jefferson County v. Tennessee Valley Authority, 6 Cir., 146 F.2d 564. And the substitute facility must be that which the claimant is legally required to construct and maintain, whether or not this type be more expensive or efficient than the facility which was condemned."

In Mayor and City Council of Baltimore v. United States, 4 Cir., 147 F.2d 786, 790, involving the condemnation of a street, which, like the property here, had no market value for the purpose for which it was being used, this Court, while affirming the award of nominal damages under the circumstance there existing, pointed out the cost of providing a substitute as proper measure of compensation in cases where a substitute was necessary. The Court, speaking through Judge Soper, said:

"We do not suggest that the city's damages upon the condemnation of its interest in a street must always be limited to a nominal amount. Frequently it occurs that the taking of a street causes substantial loss for which the city must be compensated. This happens when the municipality is required to establish and improve another street in place of the one condemned or to relocate underground structures such as water mains or utility pipes. In such cases the measure of compensation is the cost of supplying the substitute, as was held in Brown v. United States, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171; United States v. Wheeler Tp., 8 Cir., 66 F.2d 977; Town of Bedford v. United States, 1 Cir., 23 F.2d 453, 56 A.L.R. 360. This measure of damages is accepted because the city's property in the street has no market value, and resort must be made to other data to ascertain the value of what is taken. The owner must be put in as good position pecuniarily as he would have occupied if his property had not been taken. United States v. Miller, 317 U.S. 369, 373, 374, 63 S.Ct. 276, 87 L.Ed. 336."

See also United States v. Toronto, Hamilton & Buffalo Navigation Co., 338 U.S. 396, 402, 70 S.Ct. 217, 94 L.Ed. 195; United States v. Cors, 337 U.S. 325, 332, 69 S.Ct. 1086, 93 L.Ed. 1392; United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336; City of Fort Worth, Texas, v. United States, 5 Cir., 188 F.2d 217; Id. 212 F.2d 474; United States v. Los Angeles County, California, 9

Cir., 163 F.2d 124; Jefferson County, Tenn., v. Tennessee Valley Authority, 6 Cir., 146 F.2d 564; United States v. Wheeler Tp., 8 Cir., 66 F.2d 977.

██ In its brief in this court the government complains of a portion of the charge which, it says, permitted the jury to award consequential damages and also because it says that the instructions of the court were inconsistent and confusing. No such objections were made to the charge before the jury retired to consider its verdict, as required by rule 51 of the Rules of Civil Procedure, 28 U.S.C.A., and it is too late to make them in this court. We might, of course, notice them, if we considered that plain error resulting in a miscarriage of justice had been committed. But no case for the exercise of this power on our part is presented. On the contrary, we think that the jury, which had viewed the property and had listened to a great deal of testimony and argument from both sides, was fully and adequately instructed as to the rules of law applicable and was given clearly to understand that "the government is required to pay just compensation for the lands taken, but no more than necessary to indemnify the Board of Education for its loss." As to "consequential" damages, it was told that this was to be ascertained "by finding the difference in money of the fair market value of the residue before the taking and after the taking of a portion of the property"; and this had the effect of removing any error that may have occurred with respect to charging on "consequential" damages. The fact that diligent counsel for the government did not at the trial see anything in the charge to which to object, except the portion relating to cost of acquiring substitute property, argues strongly that they were not hurt by the matters of which they now belatedly complain.

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.